UNITED STATES of America

v.

Michael SARBELLO, Appellant in No. 91–5327 (D.C. C. No. 90–00190–01).

UNITED STATES of America

v.

Joseph John CENTURIONE, Appellant in No. 91–5328 (D.C. C. No. 90–00190–03).

UNITED STATES of America

v.

Michael SARBELLO, Appellant in No. 91–5650 (D.C. C. No. 90–00190).

Nos. 91–5327, 91–5328 and 91–5650.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1992.

Decided Feb. 2, 1993.

Michael Chertoff, U.S. Atty., Leslie F. Schwartz (argued), Asst. U.S. Atty., Edna B. Axelrod, Office of the U.S. Atty., Newark, NY, for appellee.

Peter Goldberger (argued), Pamela A Wilk, James H. Feldman, Jr., Law Office of Peter Goldberger, Philadelphia, PA, for appellant Michael Sarbello.

Charles H. Nugent, Camden, NJ, for appellant Joseph John Centurione.

Before: MANSMANN and HUTCHINSON, Circuit Judges, and BARTLE, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal arises from the criminal forfeiture under RICO[1] provision 18 U.S.C. § 1963 of Michael Sarbello's and Joseph Centurione's entire interest in a legitimate corrugated box manufacturing business, which the jury found Sarbello and his codefendants "established, operated, controlled, conducted or participated in the conduct of in violation of the racketeering laws" to the extent of 10% of the total assets of the enterprise.

Sarbello and Centurione argue that the scope of the forfeiture authorized under the statute violates the eighth and fifth amendments because the forfeiture is grossly disproportionate to the criminal activity involving the assets of the enterprise.

We are thus confronted with the difficult question of whether the Constitution permits the courts to reduce an otherwise mandatory 100% statutory criminal forfeiture on the basis of an analysis which proportions the seriousness of the offense to the severity of the criminal sanction, and if so, whether the facts of this case warrant such a judicial resentencing.

---

[*] Honorable Harvey Bartle, III, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963.

We hold that the court may reduce the statutory penalty in order to conform to the eighth amendment. We further hold that Sarbello has established a *prima facie* showing of an eighth amendment infringement. We will thus remand for a more than summary finding as to whether the forfeiture provision of the statute as applied to Sarbello's interest in the RICO enterprise is either an unconstitutionally "cruel and unusual punishment" or an "excessive fine."

Sarbello and Centurione further appeal on the question of whether a technical discrepancy pertaining to the theory under which forfeiture was pleaded in the indictment justifies vacating the order of forfeiture going to the RICO enterprise, and also whether an alleged abuse of the district court's discretion in limiting cross-examination of the government's key witness warrants a retrial. Finally, Sarbello contests a contempt finding against him made on the basis that he violated the district court's pre-trial restraining order. We find these arguments to be without merit.

## I.

The United States District Court for the District of New Jersey assumed subject matter jurisdiction of this case under 18 U.S.C. § 3231. The district court's civil contempt order was made pursuant to § 1963(j). Our appellate jurisdiction is predicated upon 28 U.S.C. § 1291.

## II.

The occurrence of the predicate acts constituting the substantive RICO offenses are not in issue here. Thus, it suffices to reiterate only that they consisted primarily in a bribery scheme which preempted organization of the appellants' business corporation by the Paper Workers Union by securing through bribes a contract with the International Ladies Garment Workers Union (ILGWU), and a kickback scheme which secured augmented sales of the corporation's product to a major customer, in violation of Taft–Hartley [2] and New Jersey commercial bribery laws.

Michael Sarbello and Joseph Centurione, president and vice-president respectively of Associated Packaging, Inc., (API), were indicted on 21 counts charging violations of 18 U.S.C. § 1962 and 29 U.S.C. § 186, by engaging in a pattern of racketeering through API, the RICO enterprise.[3] At the time of the forfeiture indictment, Sarbello had approximately a 67 percent interest in API; Centurione had approximately 11 percent. API was an existing legitimate business before the defendants became its owners and officers, and API remained primarily legitimate thereafter.[4]

Count 1 of the indictment charged a RICO conspiracy under 18 U.S.C. § 1962(d); Count 2 charged the defendants with participation in the affairs of API through a pattern of racketeering in violation of section 1962(c); Count 3 charged the defendants with using proceeds of racketeering activity to acquire interest in companies other than API[5] in violation of 18 U.S.C. § 1962(a); Counts 4 through 21 charged misdemeanor Taft–Hartley payoffs to Har-

---

**2.** Labor Management Relations (Taft–Hartley) Act, 29 U.S.C. § 141 *et seq.*

**3.** A third co-defendant and former officer of API, Clifford Stafford, Jr., pled guilty.

**4.** Another officer of API, Peter Schneiders, resigned from API upon notice of an imminent indictment against him. He tendered his 11 percent ownership interest back to API, entered a *nolo* plea to filing a false corporate tax return, cooperated in the investigation of API, and became the government's star witness at trial. The U.S. Attorney's Office subsequently nullified the *nolo* plea because it was not a guilty plea. Nevertheless, Schneiders continued to cooperate with the government and was sentenced to three years probation, which was terminated after

two years, and a $2,000 fine. Schneiders' testimony was largely corroborated by Centurione and other witnesses, as well as API records and various documents, and cross-examination was extensive.

**5.** Count 3 alleged that the defendants used racketeering proceeds to acquire GFI (a partnership), Holly City Packaging, Inc., Heritage Industries of New Jersey, Inc., Garden State Graphics, Inc., and Delta Progressive, Inc. The jurors unanimously found Sarbello had invested proceeds from racketeering activity only in Holly City Packaging, Inc. and Garden State Graphics, Inc.

ry Benn, the "on-the-take" official of the ILGWU. Finally, the indictment alleged § 1963 criminal forfeiture of the defendants' interest in API and in other companies acquired with racketeering proceeds. The jury convicted Sarbello of all of the charges,[6] but acquitted Centurione of all substantive charges except conspiracy.

The forfeiture allegation of the indictment was then tried to the same jury, which found in response to a special interrogatory that Sarbello's interest in API, the RICO enterprise, was tainted to the extent of 10%. (R. at 637). The jury found Centurione's interest in API tainted in the amount of 5%. (R. at 647). Subsequently, in an opinion dated January 3, 1991, the trial court held that the RICO statute required forfeiture of the defendants' entire interest in the RICO enterprise, notwithstanding the jury's determination. The court denied a stay of final forfeiture proceedings, and API has since been sold in what Sarbello characterizes as a "firesale."

In addition to forfeiture, Sarbello was sentenced to seven years' imprisonment with parole likely after two years, two years' consecutive probation, a $250,000 fine, plus $725 in special assessments. The court ordered restitution in the amount of $87,494 to Leone Industries, API's major customer and victim of the RICO kickback scam, which has subsequently been set off against a civil award to Leone.

On July 19, 1991, the district court held Sarbello in contempt of court for violating a pre-trial restraining order entered by the district court on July 24, 1990, on the basis of his use of the assets of API to pay the fees of his and Centurione's criminal defense.

### III.

 Rule 7(c)(2) of the Federal Rules of Criminal Procedure requires that notice of the extent of any interest subject to criminal forfeiture appear in the form of a forfeiture allegation in the criminal indictment or in the information.[7] Fed.R.Crim.P. 31(e) further provides that if an indictment alleges criminal forfeiture, a special verdict shall determine the extent of the forfeiture. *See United States v. Ofchinick*, 883 F.2d 1172, 1177 (3d Cir.1989), *cert. denied*, 493 U.S. 1034, 110 S.Ct. 753, 107 L.Ed.2d 769 (1990). The advisory commentary to Rule 31(e) indicates that "criminal forfeiture is an element of the offense to be alleged and proven." *See also Caplin & Drysdale v. United States*, 491 U.S. 617, n. 5, 109 S.Ct. 2646, n. 5, 2654, 105 L.Ed.2d 528 (1989) (forfeiture is a substantive charge in the indictment); *but cf. United States v. Grammatikos*, 633 F.2d 1013, 1024–25 (2d Cir.1980) (forfeiture is merely additional penalty and therefore the indictment need not allege forfeiture with particularity). A conclusory forfeiture allegation in the indictment that recognizably tracks the language of the applicable criminal forfeiture statute satisfies Rule 7(c)(2); minor incongruities in the tracking of allegations under RICO § 1963 will not fatally flaw forfeiture notice. *See e.g., United States v. Porcelli*, 865 F.2d 1352, 1366 (2d Cir.), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). Similarly, Rule 7(c)(3) provides that "error in the citation or its omission shall not be ground for dismissal of the indictment ... or for reversal ... if the error or omission did not mislead the defendant to the defendant's prejudice." In short, the forfeiture indictment need only track in some minimal form the language of the applicable statute in order to permit a responsive defense strategy. Forfeiture notice, "barebones" as the courts have permitted,[8] is mandatory under the

---

**6.** The jury's special verdict exonerated Sarbello as to one alleged scheme underlying the RICO charge, and of investing the racketeering proceeds in three of the five companies alleged. (*Supra* note 5.)

**7.** Our review of the application of Fed.R.Crim.P. 7(c)(2)'s notice requirement to the forfeiture pleading in this indictment, as all other questions of law in this appeal, is plenary. *See e.g.,*

*Tudor Dev. Group, Inc. v. United States Fidelity and Guaranty Co.,* 968 F.2d 357, 359 (3d Cir. 1992).

**8.** Although there is ample precedent for a loose interpretation of Rule 7(c)(2) notice requirements, the courts have not adequately explained the liberal notice standard which they have permitted. We believe that a tightening of that standard may be in order, particularly in light

Rule, and a minimal compliance with the Rule also serves to satisfy the Constitution's notice requirements, albeit some other form of notice may be adequate for purposes of constitutional due process.

■ At issue in the case before us is whether an alleged defect in Sarbello's and Centurione's criminal forfeiture indictments with regard to their respective interests in API so violated the minimal notice standard of Rule 7(c)(2) as to render the forfeiture order ineffective as to that property. Specifically, the defendants contend that the special verdict sheets submitted to the jurors pursuant to Rule 31(e) improperly directed the jurors to consider a basis for forfeiture for the defendants' interest in API which was not alleged in the indictment. Hence, the court was without authority to issue the API forfeiture order based on the jury's response because Rule (7)(c)'s mandatory notification procedure was violated.

Interrogatory 3a of the special verdict form, drafted with the assistance of Sarbello's trial attorney, requested that the jurors resolve whether API was an "enterprise which the defendant ... established, operated, controlled, conducted or participated in the conduct of in violation of the racketeering laws." (R. at 637 and 647). Sarbello and Centurione contend that the basis for forfeiture implied in this interrogatory, which precisely tracks the language of § 1963(a)(2) of RICO's forfeiture provision, was not alleged even in conclusory fashion in the indictment, and that the jurors' affirmative response must therefore be deemed inconsequential.

18 U.S.C. § 1963 provides,

of the 1984 amendments to the criminal forfeiture statutes which authorize pretrial restraining orders on the basis of an indictment allegation. *See* D. Smith, Prosecution and Defense of Forfeiture Cases, Vol. 2 (1992) ¶ 14.01, pp. 14–3 through 14–4.1.

Because it is undisputed that the defendants in the present case had at least *de facto* notice of the extent of the criminal forfeiture charged against them with regard to their interest in API, and because the indictment specifically listed API as a potentially forfeitable property and

(a) Whoever violates any provision of section 1962 ... shall forfeit to the United States ...

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The forfeiture indictment, after realleging and incorporating the first three RICO counts, provided:

2. The defendant[s] MICHAEL SARBELLO [and JOSEPH JOHN CENTURIONE],[9] through the aforesaid pattern of racketeering activity, acquired and maintained in violation of Section 1962 the following interests and directly and indirectly obtained the following property constituting and derived from proceeds of racketeering activity:

a. All legal and equitable interest in API ... the enterprise which he established, operated, controlled, conducted, and participated in the conduct of, in violation of Section 1962.

The defendants' argument rests on the contention that Paragraph 2, excluding sub-paragraph (a), constitutes the forfeiture allegation, while sub-paragraph (a)

the Restraining Order itself made clear reference to API, we need not be concerned here with the adequacy of current judicial interpretation of Rule 7(c)(2) notice requirements. We merely note that the current notice standard creates the unnecessary potential for claims arising from ambiguous indictment allegations.

9. Centurione's indictment mirrors the language of Sarbello's, but appears in separate paragraphs numbered 4 and 4a.

merely provides a description of the property potentially subject to forfeiture under the theory alleged in the introductory allegation clause of Paragraph 2. The introductory allegation clause of Paragraph 2 literally tracks the language of § 1963(a)(1) and (3), which describe theories of forfeiture not proven with regard to the defendants' interest in API according to the jury's special verdict.

In response to explicit interrogatories in the special verdict sheets, the jury found that the defendants had neither "acquired or maintained" any interest in API in violation of RICO's substantive § 1962 provisions, nor had the defendants derived their ownership interests in API from "proceeds" of racketeering activity. (R. at 636–37 and 646–47).[10] While sub-paragraph 2a and Interrogatory 3(a) track the language of § 1963(a)(2), that subsection of the forfeiture indictment does not, as a matter of its syntactical relation to the preceding allegation clause in Paragraph 2, purport to allege any theory of forfeiture at all, but merely describes the property which was allegedly "acquired or maintained" in violation of § 1962, or derived from racketeering "proceeds," substantive crimes not proven as to API. In short, the defense argues that the § 1963(a)(1) and (3) forfeiture allegations of Paragraph 2 were disproven with regard to API, and a § 1963(a)(2) forfeiture allegation, which would have been appropriate as to the defendants' API interest, was not properly pleaded in the indictment; therefore, notwithstanding the jury's response to Interrogatory 3a, the defendants argue that the indictment did not comply with Rule 7's mandatory notice procedures and the order of forfeiture against their interest in API must be vacated and remanded for a determination of reasonable recoupment.

Our jurisprudence regarding Rule 7(c)(2) does not require an exact or detailed tracking of § 1963 in the indictment. Nonetheless, the jury's finding that § 1963(a)(1) and (3) do not apply to the defendants' interest in API and the defendants' argument that

the indictment is syntactically problematic give us pause. Moreover, we are concerned with a slackening of our already permissive standard for Rule 7(c)(2) notice. Nevertheless, absent prejudice to the defendants in light of uncontested *de facto* notice, and in light of the indictment's clear reference to the defendants' interest in API despite an ambiguous reference to the theory of forfeiture alleged, we hold that the indictment adequately notified the defendants that the government's forfeiture allegation extended to their interest in API. We will deny the request to vacate the district court's order of forfeiture on the ground of a defect in the forfeiture pleading in the indictment.

## IV.

We turn now to the controversial issue of proportionality in the application of RICO forfeiture provision § 1963(a)(2), pursuant to which the government sought 100% forfeiture of the defendants' interest in a business which is primarily legitimate and in which the defendants' interest is arguably tainted only to the extent of a small portion of their total interest in the enterprise, as the jury found.

### A.

■ RICO § 1963 mandates that the criminal defendant forfeit *any* property subject to that provision, and further provides, after setting forth sections (1) (interest acquired or maintained), (2) (interest, security, claim or source of influence in RICO enterprise) and (3) (proceeds) quoted above, that "in addition to any other sentence imposed ... [the defendant] forfeit to the United States *all* property described in [subsection (a)]." (Emphasis added.) The Comprehensive Crime Control Act of 1984 clarified the meaning of RICO § 1963 by separating the elements of subsection (a)(2) into discrete sections (A), (B), (C), and (D). Prior to that revision, subsection (a)(2) posed an ambiguity as to whether the

---

**10.** Sarbello does not contest the propriety of forfeiture of his entire interest in other properties listed subsequent to Paragraph 2a which the jury found were acquired with proceeds of his racketeering involvement.

"source of influence" qualification pertained to all of the categories of forfeitable property listed in that subsection, or whether it modified only the last category (property or contractual right of any kind). *See e.g., United States v. Horak,* 833 F.2d 1235, 1249–50 (7th Cir.1987) (discussing this ambiguity). The courts now appear to be uniform that on its face § 1963(a)(2) mandates forfeiture of the defendant's *entire* interest in the RICO enterprise itself, and does not contemplate mitigation of that part of the sentence, notwithstanding its context within the entire sentence, and its relation to the criminal conduct.[11] Indeed some courts of appeals have held that § 1963(a)(2) divests RICO defendants of their entire interest in a RICO enterprise without regard to even gross disproportionality between the severity of the criminal penalty including the forfeiture and the seriousness and extent of the criminal taint of the enterprise's assets. *See e.g., United States v. Pryba,* 900 F.2d 748, 756–57 (4th Cir.), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990) (sentence less severe than life imprisonment without parole does not trigger proportional analysis); *United States v. Stern,* 858 F.2d 1241, 1250 (7th Cir.1988); *United States v. Horak,* 833 F.2d at 1243.

On the other hand, in seeming tension with the facial mandate of the statute, Fed. R.Crim.P. 31(e) requires the jury to determine the *extent* of criminal forfeitures, suggesting the propriety of partial forfeitures under the statute. Furthermore, the eighth amendment prohibits criminal sanctions which are "cruel and unusual" or fines which are "excessive." Thus, some courts of appeals have applied a rule of proportionality to § 1963(a)(2) forfeitures. *See e.g., United States v. Busher,* 817 F.2d 1409, 1414–15 (9th Cir.1987); *United States*

*v. Angiulo,* 897 F.2d 1169, 1211–12 (1st Cir.), *cert. denied,* 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Porcelli,* 865 F.2d 1352, 1365 (2d Cir.), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) ("Congressional aim guiding these forfeitures is to recover all of the racketeer's ill-gotten gains but not to seize legitimately acquired property"). We further note that those jurisdictions applying eighth amendment proportionality analyses in non-capital cases have adopted methods which have not been fully reconciled either within or among the circuits, making it difficult to predict what circumstances are likely to trigger a proportionality analysis, and what type of analysis will be applied. Moreover, the Supreme Court has not provided clear guidance regarding the propriety or nature of proportionality review in non-capital cases.

In *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983), the Supreme Court extended eighth amendment limitations to non-capital sentences and recognized several objective factors which guide eighth amendment review. First, the Court looked to "the gravity of the offense and the harshness of the penalty," which assumes some consensus regarding the moral nature and pernicious reach of the crime. *Id.* at 291, 103 S.Ct. at 3011. Second, the Court opined that it may be "helpful to compare the sentences imposed on other criminals in the same jurisdiction." *Id.* Finally, the Court recognized the utility of "compar[ing] the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 291–92, 103 S.Ct. at 3010; *see also Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (substantial deference is accorded statutory sentences and appellate reversal

---

**11.** Where, however, the forfeiture extends to property *outside* the RICO enterprise under § 1963(a)(2)(D), some courts have held that forfeiture is statutorily warranted only to the extent of the criminal taint. *See e.g., United States v. Porcelli,* 865 F.2d 1352, 1365 (2d Cir.), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *United States v. Ofchinick,* 883 F.2d 1172, 1179 n. 4 (3d Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 753, 107 L.Ed.2d 769 (1990)

(noting a circuit split between *Horak* and *Porcelli*); *United States v. Bucuvalas,* 970 F.2d 937, 946 (1st Cir.1992); *United States v. Angiulo,* 897 F.2d 1169, 1212 (1st Cir.), *cert. denied,* 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).

In the present case, the disputed API forfeiture pertains to property constitutive of the RICO enterprise; hence 100% forfeiture is mandated under § 1963(a)(2), subject only to constitutional proportionment.

on the grounds of constitutional disproportionality should be a rarity).

The *Solem* standard, however, was placed in question by the Court's recent decision in *Harmelin v. Michigan,* — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *Harmelin* involved a state law conviction for possession of cocaine and a resulting sentence of a mandatory term of life imprisonment without possibility of parole. The defendant alleged that the mandatory sentence was unconstitutionally cruel and unusual because it was "significantly disproportionate" to his offense, and because the mandatory nature of the statute preempted possible mitigation by the court, making inconsequential any inquiry into the potentially mitigating circumstances of the particular case. The Court issued five separate and partially conflicting opinions, none of which represented a majority of the justices, and which ranged from a repudiation of *Solem's* extension of eighth amendment proportionality to non-capital cases, (Scalia, J. joined by Rehnquist, C.J.), to a recognition of a "narrow" and sparing

proportionality doctrine, (Kennedy, J., joined by O'Connor, J., and Souter, J., concurring in part and concurring in the judgment), to an approval of the *Solem* factors, (White, J., dissenting, joined by Blackmun, J., and Stevens, J., and Marshall, J., (writing separately)). Despite the lack of clear directive from the Supreme Court, some form of eighth amendment proportionality review of appropriate non-capital sentences, such as those made pursuant to § 1963(a)(2) of RICO, is warranted in light of the Court's majority opinion in *Harmelin.*[12]

We have not yet resolved the question of the appropriate standard for deciding eighth amendment challenges to criminal RICO forfeitures. *See United States v. Kravitz,* 738 F.2d 102, 107 (3d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). We recognize the widely held view that the potentially enormous scope of § 1963(a)(2) RICO forfeiture coupled with vast prosecutorial discretion threatens eighth amendment guarantees.[13]

**12.** Justice Scalia wrote the opinion for the Court, joined by Chief Justice Rehnquist. Justice Kennedy with whom Justice O'Connor and Justice Souter joined, concurred in Part V, constituting a majority of the Court with respect to that part.

The defendant's eighth amendment claim in *Harmelin* is two-pronged alleging: (1) his sentence was "significantly disproportionate to the crime"; (2) his statutorily mandated sentence preempted a particularized application to reflect the circumstances of the criminal event.

Part V rejects the use of mitigating factors to alleviate the severity of a full mandatory sentence.

In the present case, we do not claim the *per se* necessity of judicial mitigation of severe mandatory sentences to accommodate individualized criminal circumstances. We recognize, as Justice Kennedy did, the primacy of the legislature in making laws which reflect the moral and social priorities operative in theories of punishment and sentencing. *Harmelin,* — U.S. at ——, 111 S.Ct. at 2703-04. The problem we address here, which appears to uniquely surface in the context of § 1963(a)(2) RICO forfeitures, is that *in personam* forfeiture sentences are not adequately linked to the nature and magnitude of the crime, and hence produce randomly disparate sentences which may appear blatantly unjust where the criminal activity is relatively minor, the defendant's interest in the enterprise is substantial and was acquired legitimately, and the enterprise activity is primarily legiti-

mate. The same concern simply does not arise in the context of § 1963(a)(1) and (3), the "fruits of the crime" criminal RICO forfeitures, which are almost by definition keyed to the nature and magnitude of the crime.

Similarly, Part V states "there can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory' " *Id.,* — U.S. at ——, 111 S.Ct. at 2701. Again, our argument does not turn on the fact that RICO forfeitures are mandatory. Section 1963(a)(2) *in personam* RICO forfeiture sentences are uniquely suited to judicial mitigation and may be distinguished from mandatory prison sentences, which were at issue in *Harmelin.*

**13.** The broad sweep of RICO forfeiture under §1963(a)(2) has engendered more controversy than the "fruits of crime" §§ (a)(1) (interest acquired and maintained in violation of § 1962) and (a)(3) (interest derived from proceeds obtained in violation of § 1962) of that statute, especially where the defendant's interests are acquired legitimately and the enterprise is primarily engaged in legitimate activity, as in the case before us. *See e.g., United States v. Busher,* 817 F.2d 1409, 1415-16 (9th Cir.1987). The United States Department of Justice, which must authorize prosecutions under RICO, apparently discourages sweeping forfeitures of businesses which are substantially legitimate, and aims to restrict the use of criminal RICO forfei-

We do not question the intrinsic constitutionality of RICO § 1963(a)(2) inasmuch as it comports with the state's legitimate authority to punish criminal offenders to an extent commensurate with their crime and which reflects the offender's moral culpability. We do, however, hold that the eighth amendment requires that a criminal RICO forfeiture order be justly proportioned to the charged offense. We hold that *some* proportionality analysis is required upon the defendant's *prima facie* showing that the § 1963(a)(2) sentence is grossly disproportionate, or bears no close relation, to the seriousness of the crime.

■ We thus recognize a presumption of 100% forfeiture under § 1963(a)(2), which may be rebutted by a *prima facie* showing of gross disproportionality. The government is not obligated under § 1963 to adduce evidence of the extent of criminal taint to the defendant's potentially forfeitable interests; the statute mandates *in personam* forfeiture based upon a finding of criminal guilt. Thus the burden of mitigating a draconian forfeiture verdict rests with the defendant. *See e.g., United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983).

A fact determination as to the extent of the criminal taint of the assets of a RICO enterprise and of the defendant's interest, at the defendant's request and pursuant to Fed.R.Crim.P. 31(e), would support the defendant's initial showing of gross disproportionality. The government's failure to proffer evidence of just proportionality in response to the defendant's showing of gross disproportionality will trigger judicial mitigation of the forfeiture commensurate with the nature of the crime, not necessarily the extent of the criminal taint in the enterprise or of the defendant's interest. While the magnitude of the *in personam* forfeiture need not be coextensive with the magnitude of the criminal taint, we suggest that coextension often will be objectively justified. Such a qualitative adjust-

ture to cases where forfeiture "is proportionate to the underlying criminal conduct." Racketeer Influenced and Corrupt Organizations (RICO):

ment of the punishment to fit the crime comports with, and indeed is compelled by, the operative limiting principle of the eighth amendment on the state's power to punish.

We note that a district court's proportionality analysis, while it will not in every case be extensive or encompass the three factors set forth in *Solem,* must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction. Other helpful inquiries might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability, and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct. *See e.g., United States v. Busher,* 817 F.2d at 1415 (where dollar amount of fraudulent conduct constituted a small fraction of the legitimate business of the enterprise, the court found a potential *prima facie* showing of excessive forfeiture). The language of the eighth amendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime.

## B.

■ The jury in the case before us found that the criminal taint to API's activity and to Sarbello's ownership interest was only 10% throughout the duration of the defendants' scheme, and 5% to Centurione's ownership interest. Furthermore, the offenses charged were non-violent and appear to be without irreversible or serious collateral consequence. On the basis of these findings, we hold that the defendants have raised a *prima facie* claim of gross disproportionality. Thus, the district court was obligated to give the issue careful scrutiny.

A Manual for Federal Prosecutors (99 DOJ 1985); *see also* United States Attorneys Manual Section 9–110.410.

In its January 23, 1991 Memorandum Opinion and Order, the district court performed a minimal proportionality analysis by reiterating the standard the Court of Appeals for the Second Circuit set forth in *United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir.), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), that if the defendant's interest in the RICO enterprise is "deeply implicated in" the racketeering activity, the mandated 100% statutory forfeiture is appropriate. As well, the district court reiterated the standard we suggested in *Kravitz*, 738 F.2d 102, 107 *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985), i.e., whether the property seized was "integral to" the racketeering scheme. After summarily finding that the racketeering crimes "permeated all aspects of API's operations which were governed by the collective bargaining agreement with the union, and a large part of API's work force was represented by the union," (Mem. Op. at 7), the district court issued its brief conclusion that 100% forfeiture was not only mandated by the statute, but was within eighth amendment limitations on punishments or fines.

We hold that, upon a *prima facie* showing of gross disproportionality by the defendant, the eighth amendment requires more than a conclusory finding that 100% forfeiture is within constitutional limits.

The present case exposes the inadequacy of the *Porcelli* and *Kravitz* approaches. There remains disputed testimony in the record that the union contract which Sarbello unilaterally negotiated with the ILGWU official was reasonably equitable to both labor and management.[14] There is further dispute concerning the benefit reaped by Sarbello as a result of his crimes.[15] In light of these disputes and because the district court did not examine factors essential to a proportionality analysis, such as the nature and extent of the crime and its harmful social dimension, we will remand this issue for a proportionality analysis in keeping with our opinion.[16]

### V.

■ Sarbello also seeks review of the district court's discretionary limitation of cross-examination of the government's key witness, Peter Schneiders, an insider to the racketeering activity, asserting that the court impinged his right to confront an adverse witness in violation of the sixth amendment.

The district court permitted substantial cross-examination of Schneiders, but limited defense counsel in his attempt to impeach Schneiders on the basis that Schneiders cooperated with the government in order to avoid forfeiture of his 11% interest

**14.** A union official called by the government testified on cross that the ILGWU contract was equitable to labor and management. (R. at 415–16; Appellant's Brief at 7; Reply Brief for Appellant at 6, n. 6). The government, however, showed evidence that API received significant improper benefits from the ILGWU contract, including a 40–hour work week from a union that normally negotiates a 35–hour work week, and atypically low wage increases. Other benefits to management from the ILGWU contract included fewer employee holidays, no seniority clause, less protection for red-circle salary rates, and lower average hourly pay rates. (Appellee's Brief at 30–31).

**15.** Sarbello represents that the pre-indictment market value of API was $18 million, (Appellant's Brief at 21), a figure uncorroborated, and the facts indicate that Sarbello's ownership interest was 67%. The conservator's post-verdict estimate of API's value was $5–$10 million. (*Id.;* Appellant's Reply Brief at 6–7.) The actual post-forfeiture sale price was $3.8 million. (Ap-

pellee's Brief at 32.) Sarbello claims "at least a 20-fold ratio between the improper payments and the value of the forfeiture ... [or with treble damages factored] at least 14:1." (Appellant's Brief at 24). On the other hand, the government's assessment of the gains to API from Sarbello's racketeering activities, *supra* n. 14, and the value of the defendants' interest in API present a perspective which conflicts with Sarbello's claims. At any rate, the government contends that the actual selling price of API is "the best indicator of the value of API," and that the statute contemplates any arguable disproportionality to be punitive. (Appellee's Brief at 32).

**16.** It is not clear whether criminal RICO forfeiture is a "fine" or a form of "punishment" for purposes of eighth amendment analysis. We assume, however, that the mode of proportionality analysis for determining whether a fine is "excessive" would be similar or virtually identical to that employed to determine whether a punishment was "cruel or unusual."

in API. Since Schneiders' testimony was key to their convictions, the defendants assert that their constitutional right to confrontation, which includes the right to conduct reasonable cross-examination, *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986), was infringed and they were thereby prejudiced. The court imposed the restriction on cross pursuant to its broad discretion in the conducting of a trial, in order to implement a bifurcation of the guilt and forfeiture phases of the trial.[17]

We note that cross was permitted on the question of Schneiders' exposure to criminal charges, the amount of jail time he might have faced on the charges he avoided, the fact that he received probation instead of a possible jail term, and the fine that might have been imposed if he had not cooperated. Defense counsel was permitted to ask Schneiders, without explicit reference to statutory forfeiture, whether the witness "didn't want to lose any of the money coming [to him] from API." (R. at 297–98). This question was presented to Schneiders in varied forms several times during cross-examination. (R. at 309 and 316). Defense counsel examined Schneiders as to whether he "wanted to pay the least amount of punishment, whether it be jail, fine or other consequences, as possible," and whether he was "scared that [he] would not get the cooperation of the government in the reduction of the charges in the limiting [of] the seriousness of them and in minimizing the consequences if [he] did anything except cooperate by doing what the government wanted him to do." (Supp.App. for Appellee at 176.)

We determine that in the full context of all the testimony and in light of defense counsel's extensive cross-examination, the district court's limitation on one line of

inquiry did not rise to the level of an abuse of the district court's discretion, nor did it unduly prejudice the case or violate the defendants' right to confront an adverse witness. In any event, any such error would have been harmless.

In *Delaware v. Van Arsdall*, the Supreme Court explained the criteria for determining whether a limiting error is harmless. The factors the Court examined included "the importance of the witnesses' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684, 106 S.Ct. at 1438.

Although the district court in the present case acted within its discretion, we express concern regarding the restriction of defense counsel's line of inquiry. We have suggested bifurcation of the guilt phase and the forfeiture phase as an accommodation of the *defendant's* right to decline to testify at the trial of his guilt, while preserving his option to testify against potential forfeiture penalties. Questioning the government witness' motive to avoid statutory forfeiture in the defendant's cross-examination of the witness would not have significantly impeded the substantive policy concerns which bifurcation is intended to promote. Bifurcation does not primarily aim to keep the notion of a potential forfeiture penalty out of the minds of jurors during the guilt phase of trial, but rather is primarily a device that safeguards the defendant's rights.

Even deferring, however, to the notion that "wide latitude should be afforded [cross-examination] where a genuine issue

---

**17.** In *United States v. Sandini*, 816 F.2d 869 (3d Cir.1987), we required that *in personam* forfeiture proceedings be bifurcated from the guilt phase of criminal trials in order to mitigate any potential clash between a criminal defendant's right to decline to take the stand when his guilt is being tried, and his right to demand due process before his property is forfeited. With-

out bifurcation, if a defendant wished to testify as to property he believed not to be subject to forfeiture, he was subject to cross on the guilt phase. Thus, in deference to the defendant's right to avoid the stand in his own criminal trial, the court addresses forfeiture only after a verdict on guilt.

of credibility exists," *United States v. Rockwell*, 781 F.2d 985, 988 (3d Cir.1986) (quoting *Harris v. United States*, 371 F.2d 365, 367 (9th Cir.1967)), by the *Van Arsdall* standard, we find that the trial court was within its discretion in limiting defense counsel's inquiry to general terms on the issue of forfeiture. The limitation was not substantial in light of the full context of Sarbello's opportunity to impeach the witness. In any event, we are confident that the limitation did not effect the outcome of the trial, and hence that the limitation was so harmless that a retrial is not warranted.

## VI.

■ Finally, Sarbello contests a contempt finding against him made on the basis that he violated the district court's pre-trial restraining order when he authorized payment of his and Centurione's defense attorney's fees out of the assets of the RICO enterprise.

On appeal we review a contempt citation under the abuse of discretion standard, which may be established by showing an error of law or a clearly erroneous judgment or finding of fact. *See, e.g., MAC Corp. of America v. Williams Patent Crusher and Pulverizer Co.*, 767 F.2d 882, 885 (Fed.Cir.1985). The resolution of ambiguities ought to favor the party charged with contempt. *United States on behalf of IRS v. Norton*, 717 F.2d 767, 774 (3d Cir.1983); *Inmates of Allegheny County Jail v. Wecht*, 754 F.2d 120 (3d Cir.1985) ("Persons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct.") (*Id.* at 129). A contempt citation should not be granted if "there is ground to doubt the wrongfulness of" the defendant's conduct. *Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir.1982) (quoting *Fox v. Capital*, 96 F.2d 684, 686 (3d Cir.1938)). Contempt must be established by clear and convincing evidence. *Quinter* at 974. To prove contempt the government must demonstrate that (1) a valid court order existed, (2) that the defendant had knowledge of the order, and that (3) he disobeyed that order. *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir.1990).

The restraining order of July 24, 1990, which was negotiated with defense counsel, enjoined Sarbello and Centurione from directly or indirectly disposing of API's assets "without prior approval and Order of [the district court] and upon prior written notice to the United States and an opportunity for the United States to be heard...." It further "designated [the defendants] as the signature authorities" for API and as the "sole authorities to approve necessary and legitimate disbursements as may be necessary to continue the daily operations" of API. Among the disbursements pre-approved by the court was the "payment of liabilities which existed at the time of the signing of [the] Order," which were "made in the ordinary course of business" and were not evasive of the court's Order. (R. at 34–36.)

Based on information discovered by the conservator of API that Sarbello approved API's payment of his and Centurione's attorneys' fees for the trial of this case, the government moved for contempt. After a hearing, the district court found Sarbello in contempt. The court rejected Sarbello's defense that a corporate agreement entered into before the court issued the restraining order authorized payment of the legal fees of corporate officers and made defense attorneys' fees a pre-existing liability of API.

Pursuant to our analysis in *Roe*, we find that a valid court order existed, and that Sarbello was aware of the terms of the restraining order. It is reasonable to assume he was alerted to potential areas of violation, especially in the gray area of criminal defense indemnity. It is uncontested that Sarbello did not request clarification of the restraining order and that he failed to bring the payments to the attention of the United States Attorney. Whether he disobeyed the order turns on whether payment of defense attorneys' fees was "necessary and legitimate," and "made in the ordinary course of business" pursuant to the terms of the restraining order.

The defendant suggests that we define these terms by applying principles of tax law. For example, the Supreme Court has held that attorney's fees incurred in a criminal defense are deductible from gross income as "ordinary and necessary" business expenses. *See, e.g. Commissioner v. Heininger*, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943) (unsuccessful defense against a fraud order which would destroy the defendant's business is deductible as ordinary business expense); *Commissioner v. Tellier*, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966). Nevertheless, it is not clear that tax law cases are analogous to the present case. Federal income tax is not a sanction against crime and "does not concern itself with the lawfulness of the income it taxes." *Tellier* at 691, 86 S.Ct. at 1120.

Under New Jersey's indemnification statutes, (N.J.Stat. § 14A:3–5(4)), indemnification is an enforceable right where criminal defense is successful, and is otherwise permissive if an appropriate body, such as the board's disinterested directors, determines that the statutory standard has been met.[18] Permissive indemnification requires the corporate agent's "good faith" and, with respect to criminal proceedings, that he have "no reasonable cause to believe his conduct was unlawful." (N.J.Stat. § 14A:3–5(2)).

Sarbello was clearly not indemnified as a matter of statutory right. Even if Sarbello's action falls within the standard for permissive indemnification, the procedures for authorizing permissive indemnification require case-by-case analysis. The very nature of the authorization procedure points to its atypicality and mitigates against Sarbello's characterization of indemnification in his case as "ordinary."[19] In response to a question at the contempt hearing as to whether the payments were necessary to the current daily operations of the business, Sarbello testified only that API would have indirectly suffered if he had been unable to pay for his own defense, (R. at 769), but the record is silent with regard to Sarbello's ability to assume those payments from personal resources.

At any rate, there is considerable uncertainty regarding permissive authorization of indemnification because the statutory standard of conduct is fluid. This uncertainty renders every case extraordinary, and therefore Sarbello could reasonably have been expected to seek the court's authorization of payments.

We find that the district court's findings of fact were not clearly erroneous nor did the court commit any error of law. The court thus properly held Sarbello in civil contempt, imposing immediate restitution of the total amount of legal fees paid by API, excluding payments made to attorneys which preceded the July 24th Order. We will affirm the district court's contempt order.

## VII.

For the foregoing reasons, we will vacate the district court's order of forfeiture and remand for an eighth amendment proportionality analysis of the government's forfeiture request against the defendants' ownership interest in API, the RICO enterprise. We will affirm the district court in all other respects.

---

**18.** The New Jersey statute requires authorization by a majority of a quorum of disinterested directors, by independent legal counsel appointed by a majority of the disinterested directors, or by the shareholders. Section 14A:3–5(5). There is no evidence that the authorization Sarbello claims preceded the restraining order passed muster under the statute.

**19.** As a public policy note, indemnification of corporate agents, as an ordinary event in the course of business, against criminal defense attorney's fees, may encourage criminality by severely reducing the corporate agent's personal liability.