UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF PROPERTY LOCATED AT SHELLY'S RIVERSIDE HEIGHTS LOT X, McVEYTOWN, MIFFLIN COUNTY, PENNSYLVANIA, with all Appurtenances and Improvements Thereon, Defendant.

Civ. A. No. 1:CV–93–598.

United States District Court,
M.D. Pennsylvania.

May 5, 1994.

**634**

John J. McCann, U.S. Attys. Office, Lewisburg, PA, for plaintiff.

Spero T. Lappas, Harrisburg, PA, for defendant.

Tab R. Deaner, pro se.

CALDWELL, District Judge.

### MEMORANDUM

Pending are the Government's motions for summary judgment and for default, dismissal of the claim, or discovery. We exercise jurisdiction according to 28 U.S.C. § 1331.

### I. *Facts and Procedural History*

This civil forfeiture action arises from an investigation into marijuana cultivation in a log cabin on a parcel of land in McVeytown, Pennsylvania, owned by claimant Tab Deaner and by Melinda Kurtz.

In January, 1992, agents of the federal Drug Enforcement Administration ("DEA") received intelligence reports that Mr. Deaner had purchased approximately 244 pounds of cultivation supplies from Wormsway Organic Indoor/Outdoor Garden Supply, a company the DEA suspected of supplying marijuana-growing equipment and supplies. *See* Affidavit of Special Agent Mark Andrasi. Agents observed the Deaner/Kurtz residence, and noted that the windows were covered and that one window, in particular, was covered by an opaque piece of plastic. *Id.* Based on their experience, the agents understood that marijuana growers often cover windows in order to keep heat in the growing areas and also, of course, to hide their activities. In January and March, 1992, agents examined the household trash of Mr. Deaner and Ms. Kurtz. They found stems and leaves of marijuana mixed with soil, some of it clearly fresh. *Id.* Agents also found plastic jugs cut in half, devices often used by marijuana growers to germinate plants. On March 31 and April 1, 1992, agents flew over the Deaner/Kurtz property with an airplane equipped with a thermal-imaging device. They detected large amounts of heat emanating from the residence, a finding consistent with marijuana cultivation, which requires large lights. *Id.*

Agents arrested Mr. Deaner and Ms. Kurtz on April 3, 1992, and charged both with conspiracy to manufacture, distribute, and possess marijuana and with the substantive offense of manufacturing marijuana with intent to possess and distribute it. An indictment followed on April 14, 1994, and both eventually plead guilty. On August 3, 1992, Judge James McClure of this court accepted Mr. Deaner's conditional plea to Count II of the indictment, which charged him with manufacturing marijuana. Judge McClure accepted Ms. Kurtz's guilty plea to part of Count III of the indictment, specifically the portion charging her with possession of marijuana. At the time of his guilty plea, Mr. Deaner acknowledged that he had operated an indoor marijuana growing operation that included some 20 plants weighing approximately 23 kilograms.

On November 2, 1992, Judge McClure sentenced Mr. Deaner to 21 months imprisonment, but waived any fine because of the defendant's inability to pay. Judge McClure

sentenced Ms. Kurtz to 12 months probation and a $500 fine.[1]

On April 22, 1993, the Government filed a verified complaint under 21 U.S.C. § 881(a)(6) and (7) to seize the parcel of land on which the Deaner/Kurtz cabin sits. The Government gave notice to Mr. Deaner and Ms. Kurtz and, on May 27, 1993, Mr. Deaner made a claim on the property. His claim explains that he and Ms. Kurtz purchased the land on January 21, 1993, for $7,950.[2] Mr. Deaner failed to timely file an answer as required by Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereafter "Supp. Adm. Rules").

On April 27, 1993, on motion of the Government, we found probable cause and ordered the United States Marshal to seize the property. Mr. Deaner made a motion for court-appointed counsel on June 22, 1993, and we denied the motion on September 27, 1993. The Government filed the current motion for summary judgment and accompanying brief on December 2, 1993. On December 20, 1993, Mr. Deaner filed a short opposition brief, referring to the recent decision of the Supreme Court of the United States in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin*, the Court held that civil forfeiture actions under 21 U.S.C. § 881(a)(7) are subject to an Eighth Amendment excessive fines analysis. By order of January 27, 1994, we required the Government to file a brief addressing the possible application of *Austin* to this case. On February 22, 1994, the Government filed a motion for default, to dismiss Mr. Deaner's claim, and for discovery. The accompanying brief discusses the *Austin* issue and we take it as a response to our order.[3]

## II. *Law and Discussion*

### A. The Government's Motion for Default

As noted, both Mr. Deaner and Ms. Kurtz purchased the ten-acre property in question. *See* Exh. A to the Verified Complaint.

Civil forfeitures under 21 U.S.C. § 881 are actions *in rem*, "which shall conform as near as may be to proceedings in admiralty." 28 U.S.C. § 2461(b); *Republic National Bank of Miami v. United States*, —— U.S. ——, ——, 113 S.Ct. 554, 557, 121 L.Ed.2d 474 (1992). Thus, we apply the Supplemental Rules for Certain Admiralty and Maritime Claims. *See United States v. $288,914 in United States Currency*, 722 F.Supp. 267, 270 (E.D.La.1989).

A civil forfeiture action brought under 21 U.S.C. § 881 involves a legal fiction; namely, that the property is guilty of some offense. *See Austin, supra; United States v. $83,900.00 in United States Currency*, 774 F.Supp. 1305, 1319-20 (D.Kan.1991); *See generally*, Jack Yoskowitz, *The War on the Poor: Civil Forfeiture of Public Housing*, 25 Colum.J.L. & Soc.Probs. 567 (1992); Lawrence A. Kasten, Note, *Extending Constitutional Protection to Civil Forfeitures That Exceed Rough Remedial Compensation*, 60 Geo.Wash.L.Rev. 194 n. 143 (1991). The defendant in such a case is the property itself, thus creating the peculiar captions that pit the United States against "$22,287 in United States Currency" or "One 1993 Toyota Camry." *Id.* Because the property, of course, is unable to defend itself, the owner or other party with an interest in the property is allowed to intervene as a claimant, as Mr. Deaner has done here. *Id.* Rule C(6), Supp. Adm.Rules, requires that

[t]he claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been exe-

---

**1.** On August 23, 1993, the United States Court of Appeals for the Third Circuit affirmed an order by which Judge McClure denied a suppression motion filed by Mr. Deaner.

**2.** In a letter addressed to the Court, Mr. Deaner describes the construction of the log cabin on the property. Mr. Deaner and various family members built the cabin by hand without using any electrical tools. Letter of 12/20/93 from Tab R. Deaner to the Court.

**3.** We note that neither the Government nor Mr. Deaner complied with Local Rule 7.4, which requires the party moving for summary judgment to file a "separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The rule also requires the opponent of a summary judgment motion to file a similar statement in response.

cuted, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim.

Ms. Kurtz has filed neither a claim nor an answer; indeed, she has failed to defend her property interest in any way. As such, we must find her in default although, as we will discuss, the effect of that default is insubstantial.

Mr. Deaner, as noted, did not file a timely verified answer. However, on March 7, 1994, he filed a motion to file an answer *nunc pro tunc*.[4] The Government argues that Mr. Deaner has not met the standard for setting aside a default judgment.

■ We note first that there has been no entry of default. Further, the United States Court of Appeals for the Third Circuit has indicated that default judgments are disfavored "so that cases may be decided on their merits." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir.1951); *see also, United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir.1984). We ask whether (1) the plaintiff will be prejudiced, (2) the defendant has a meritorious defense, and (3) the default was the result of the defendant's culpable conduct. *$55,518.05, supra*, at 195. Here, the only prejudice to the Government is that Mr. Deaner might mount a successful defense. Further, as we shall discuss, Mr. Deaner has offered a meritorious defense on behalf of the property. In addition, the default was most likely the re-

sult of the fact that Mr. Deaner is, for the most part, unrepresented. We read Third Circuit precedent to suggest that we should consider this matter on the merits rather than afford the Government a technical victory.[5]

**B. Standard for Summary Judgment**

■ Summary judgment is appropriate when there remain no genuine issues as to any material facts and judgment may be entered as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a movant submits that there is no genuine issue as to a material fact, its opponent must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). We agree with the Government that the facts here are clear and undisputed. The remaining issues are legal.

**C. Excessiveness, the Eighth Amendment, and Austin**

■ In *Austin*, the Court determined that civil forfeiture is a form of punishment and is, therefore, subject to scrutiny under the Excessive Fines prohibition of the Eighth Amendment. However, the Court gave no guidance to courts seeking to determine when forfeiture is excessive, leaving the question to the lower courts in the first instance.[6]

---

**4.** When there was no response from the Government, we granted the motion according to Local Rule 7.6. Thereafter, the Government notified us that it had not been properly served with Mr. Deaner's motion. Thus, we vacated the order granting Mr. Deaner's motion and afforded the Government a chance to respond. That response was filed on April 25, 1994.

**5.** Some courts have held that, in the absence of strict compliance with the procedures of Rule C(6), a claimant is without standing to challenge a forfeiture. *See United States v. United States Currency in the Amount of $2,857.00*, 754 F.2d 208, 212 (7th Cir.1985); *$288,914 in United States Currency*, 722 F.Supp. at 270–271 ("Strict conformity, not casual compliance, is the message of the case literature."). There are other considerations. Mr. Deaner is a person without knowledge of the law and the proper procedure

applicable to *in rem* cases. His failure to defend is technical in nature only—he filed a verified claim and managed to oppose the Government's motion for summary judgment. Further, he has written a letter to the Court indicating his strong interest in the property. *See, supra*, n. 2.

**6.** The *Austin* Court held that forfeiture under 21 U.S.C. § 881 amounts to punishment, thus implicating the Eighth Amendment. —— U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 505. The Court noted that a civil sanction that solely serves a remedial function is not punishment, thus suggesting that such a sanction would not merit Eighth Amendment scrutiny. *Id., citing United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). While we read *Austin* to hold that civil forfeitures under § 881 are *always* punitive, the issue is unimportant in the case at bar; it is beyond

In *United States v. Premises Known As RR # 1*, 14 F.3d 864 (3d Cir.1994), the Third Circuit likewise declined to establish a test, but it did offer some direction to the district courts. *Id.* at 873.

First, the court warned that a district court should not give undue weight to the nexus between the property at issue and the crime that forms the basis for the forfeiture action. *Id.* at 873. The court referred to the tri-partite test of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

> In *Solem*, the Supreme Court identified three objective criteria for use in an Eighth Amendment proportionality analysis: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." The Supreme Court also said that in weighing these factors a court should take into account the "absolute magnitude of the crime" and the "culpability of the offender."

*Premises Known As RR # 1, supra*, at 875 *quoting Solem, supra* (citations and footnote omitted). Further, in *United States v. Sarbello*, 985 F.2d 716 (3d Cir.1993), the Third Circuit interpreted *Solem* in the context of criminal RICO forfeiture. Its holding is helpful in the instant case.

> a district court's proportionality analysis, while it will not in every case be extensive or encompass the three factors set forth in *Solem*, must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction. Other helpful inquiries might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability, and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct. The language of the eighth amendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime.

*Id.* at 724. (citation omitted).[7] Finally, we note that, in *Sarbello*, the Third Circuit suggested that the initial burden falls on the Government to demonstrate probable cause that the property at issue was connected to the drug crime; the burden then shifts to the defendant to demonstrate by a preponderance of the evidence that a fine or forfeiture is disproportionate or excessive. *Id.*[8]

We turn, then, to the instant case. Mr. Deaner and Ms. Kurtz plead guilty to manufacturing and possessing marijuana, respectively. The Government points to no specific evidence that Mr. Deaner and Ms. Kurtz sought to distribute the marijuana they cultivated. Indeed, the amount of marijuana seized in the cabin—23 kilograms—while not insignificant, is listed as one of the smaller amounts recognized in the criminal statute. *See* 21 U.S.C. § 841(b)(1)(D).[9]

---

dispute that seizure of the Deaner/Kurtz cabin and the 10 acres on which it sits serves at least in part to punish the owners for their criminal conduct.

7. In *Premises Known As RR # 1*, the Third Circuit cited to the useful analyses in David J. Stone, Note, *The Opportunity of Austin v. United States: Toward a Functional Approach to Civil Forfeiture and the Eighth Amendment*, 73 B.U.L.Rev. 427 (1993), and Ron Champoux, Note, *Real Property Forfeiture Under Federal Drug Laws: Does the Punishment Outweigh the Crime?*, 30 Hastings Const. L.Q. 247 (1992); see also, P.S. Dogma, Civil Forfeiture in the Federal Courts (1993).

8. Actually, as neither the Third Circuit nor the U.S. Supreme Court has enunciated a test for excessiveness, we borrow the burden of proof from that used by courts to determine when a claimant has shown that there is an insufficient nexus between the sought-after property and criminal activity. We believe the preponderance standard is an appropriate one, given its common use in the civil context. *See also*, 19 U.S.C. § 1615.

9. That section sets forth the following potential penalties:
> In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight ... such person shall ... be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual ...

21 U.S.C. § 841(b)(1)(D).

Further, while the Government seeks to seize a parcel of land of approximately ten acres, the evidence suggests that the illegal activity was entirely confined to the cabin, which sits on one small portion of that large tract of land.

Mr. Deaner, the only claimant in this matter, was sentenced to almost two years in prison for his participation in the marijuana-growing activities in his cabin. In sentencing him, Judge McClure specifically waived a fine, finding that Mr. Deaner did not have the means to pay it. Given the Supreme Court's determination in *Austin* that civil forfeiture in many instances amounts to a criminal fine, we note the apparent intent of the Government to impose a fine by civil action even though Judge McClure declined to impose one in the criminal action. Certainly, Judge McClure arrived at the sentence he imposed only after careful consideration of the facts of the case.

■ We consider, as well, the factors set out by the Third Circuit in *Sarbello*, namely, weighing "the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction" as well as "the personal benefit reaped by the defendant, the defendant's motive and culpability, and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct." 985 F.2d at 724.[10]

In the instant case, there is no question that the offense was a serious one. In the realm of drug offenses, however, it was not a crime of tremendous gravity, a fact emphasized by the hierarchy Congress established in 21 U.S.C. § 841. The Government has presented no evidence that the "harmful reach" of Mr. Deaner and Ms. Kurtz's conduct extended beyond their own property, if in fact it extended beyond the cabin itself. The sanction the Government seeks to impose is a substantial one; even if the monetary value of the land and the cabin are not great, they seem to be the only significant possessions Mr. Deaner has. Additionally, the Government has failed to point to any benefit inuring to Mr. Deaner from his criminal conduct, other than the obvious availability to him and Ms. Kurtz of a ready supply of marijuana.

While our discussion thus far militates in favor of denying the Government's effort at forfeiture, there is another consideration. As noted, the statute proscribing Mr. Deaner's conduct, 21 U.S.C. § 841, exposed him to a potential fine of as much as $250,000. As noted, Mr. Deaner and Ms. Kurtz purchased the land in question for $7,950. Even with the addition of the log cabin, it is indisputable that the value of the property does not even approach the fine allowed by the statute. However, we do not find this fact to weigh heavily in favor of forfeiture. Section 841(b)(1)(D) sets forth the penalty for those who "manufacture, distribute, or dispense" "less than 50 kilograms" of marijuana. Thus, the statute sweeps within its orbit offenders such as Mr. Deaner, who manufactured 23 kilograms but did not distribute it, as well as offenders who manufacture and distribute more than twice as much.

We believe the Government's forfeiture action in this case is clearly excessive in light of the crime committed. Indeed, in the words of the Third Circuit in *Sarbello*, the attempted forfeiture reaches "such a level of excessiveness that in justice the punishment is more criminal than the crime." 985 F.2d at 724. Therefore, we find as a matter of law that forfeiture in this case would offend the Eighth Amendment as an excessive fine. *See Austin, supra.*[11]

> This question too must be left to the district court in the first instance. Considering the present uncertainty of the law, however, it might, in the interest of judicial efficiency, consider submitting the question to a jury on a special interrogatory and then alternately

---

10. *Solem* also suggests comparison of the punishment to others in the same and different jurisdictions. 463 U.S. at 292–93, 103 S.Ct. at 3010–11. The record is devoid of such information, but we do not read the case law to suggest that a comparison is necessary in all cases.

11. In *Premises Known As RR # 1*, the Third Circuit declined to determine definitively whether excessiveness is a question for judge or jury.

As a procedural matter, we note that Mr. Deaner has not filed a motion for summary judgment on behalf of the property. However, in certain circumstances, a district court can enter summary judgment in favor of a party *sua sponte. Viger v. Comm'l Insurance Co. of Newark,* 707 F.2d 769, 774 (3d Cir.1983). The Government has conceded that there are no genuine issues of material fact and that the case may be decided as a matter of law. *See* Fed.R.Civ.P. 56. Thus, we will enter judgment in favor of the property.

There is, further, the matter of what effect Ms. Kurtz's default has on this disposition. We reiterate that civil forfeiture proceeds according to the fiction that the property is guilty. As such, a claimant serves only to offer defenses on behalf of the property. Here, based on Mr. Deaner's claim, we have found that forfeiture of the property would be an excessive fine. Thus, the property has been adequately defended and a claim by Ms. Kurtz would have been redundant.

### D. Government's Motion for Discovery

Finally, we consider the Government's motion for discovery. The Government asks that, should we decline to grant summary judgment or default judgment, we allow it 90 days for discovery. We believe such a period of discovery is unnecessary, and note that in making its motion for summary judgment, the Government represented to the Court that there are no remaining issues of material fact.

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 5th day of May, 1994, upon consideration of the Government's motions for summary judgment and for default, and Tab Deaner's motion for leave to file an answer *nunc pro tunc,* it is ordered that:

1. Tab Deaner's motion to file an answer *nunc pro tunc* is granted.

2. The Government's motion for default, to strike, or for discovery is denied.

3. The Government's motion for summary judgment is denied.

4. Judgment is entered in favor of Defendant One Parcel of Property Located at Shelly's Riverside Heights, Lot X, McVeytown, Mifflin County, Pennsylvania, with all appurtenances and improvements thereon, and against Plaintiff the United States of America.

5. The Clerk of Court shall close this file.

---

treating the answer as non-binding and decide the excessiveness question itself.
*Premises Known As RR # 1, supra,* at 876. We read this *dictum* to suggest that the decision is a legal one that might benefit from "the infusion of the earthy common sense of a jury." *Id., quoting*

*United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 469 (7th Cir.1980). We do not read it to require a jury determination, particularly in cases where, as here, the court's determination is in favor of the property.