## UNITED STATES

### v.

### William Bennett TANNER, Defendant.

### Cr. A. No. 91–00097.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

May 3, 1994.

R. Fitzgerald, U.S. Atty.

Thomas J. Wilson, IV, Wilson & Bowers, Harrisonburg, VA, Marvin D. Miller (for sentencing), Alexandria, VA, for defendant.

### MEMORANDUM OPINION

MICHAEL, District Judge.

This matter appears before the court for resolution of the outstanding forfeiture issues in the case. Upon the jury's return of a guilty verdict on all 25 Counts in the Indictment, the court entered a Preliminary Order of Forfeiture on January 26, 1993, declaring as forfeited the property contained in Count 25 of the Indictment. In its Order, the court required the United States Marshal to publish at least once for three successive weeks notice of the court's forfeiture order pursuant to 21 U.S.C. § 853(n) and instructed persons asserting a legal interest in the property to file a petition for a hearing within 30 days of final publication. Receiving no such petition, the court proceeded with the sentencing hearing on January 6, 1994, addressing Defendant's objections to the Presentence Investigation Report (PSR) and pronouncing a sentence of imprisonment of 27 months on the 24 substantive counts, each to run concurrently, plus three years of supervised release. The court imposed no fine, instead choosing to address the forfeiture of all of Defendant's real and personal property

located at 1310 Churchville Avenue, Staunton, Virginia[1] and the T–Mart Drug Store business located thereon.[2]

After hearing defense counsel's argument as to his belief that the forfeiture of the realty and business in this case violates the Eighth Amendment as an excessive fine, the court decreed as forfeited the property identified in Count 25 of the Indictment. The court deferred entering the final order of forfeiture in the case, however, in order to receive from counsel valuations of all the property subject to forfeiture, including the assets and liabilities of the T–Mart Drug Store business. In addition, the court heard argument from counsel for Defendant's wife who has filed a petition under 21 U.S.C. § 853(n), challenging the forfeiture in this case. It appearing that the outstanding matters are now ripe for disposition, the court undertakes explication of its findings in the case.

## I.

The court is first called upon to conduct the proportionality review required by *Alexander v. United States,* —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), and its companion case, *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which applies to *in rem* civil forfeitures. In a defendant's challenge to the forfeiture as an excessive fine and as cruel and unusual punishment under the Eighth Amendment, the Supreme Court held that the *in personam* criminal forfeiture in *Alexander* constituted monetary punishment under the Eighth Amendment.[3] Consequently, the Court directed the appellate court to analyze the forfeiture under the Excessive Fines Clause in terms of the nature and extent of the criminal activity over the period of time in which the defendant acted. *Alexander,* —— U.S. at ——, 113 S.Ct. at 2776.

■ The court interprets *Alexander* as requiring an evaluation in this case of the forfeiture of the T–Mart Drug Store business and all Defendant's property located at 1310 Churchville Avenue in relation to the time period in which Defendant conducted his criminal activities and the extent and nature of those activities. *See also United States v. Borromeo,* 1 F.3d 219, 221 (4th Cir.1993) (remanding for proportionality review of "value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture"). Here, the jury convicted Defendant on January 12, 1993 of violations relating to controlled substances distribution and false information submission, all of which occurred between January and November, 1989. During that time period, the court finds that Defendant distributed approximately 48,000 units of Schedule II, III and IV drugs. *See* PSR at 4. The court believes, as the jury must have believed, that Defendant could not have carried out his illegal distribution activities but for the fact that he was a licensed pharmacist. The pharmacy business and the building in which the business was located "provided an air of legitimacy and protection from outside scrutiny" and, thus, permitted facilitation of the illegal distribution of controlled substances without obvious detection. *See United States v. Schifferli,* 895 F.2d 987, 988–89 (4th Cir. 1990) (function of the dentist office property was directly related to defendant's illegal writing of prescriptions). Here, Defendant intended to fill and distribute controlled substances at the T–Mart Drug Store without proper authorization, much as the dentist in *Schifferli* intended to write illegal prescriptions, using the building in which his office was situated to provide an air of legitimacy. *See United States v. Two Tracts of Real Property With Buildings, Appurtenances*

---

1. Count 25 and the Order of Forfeiture notified Defendant that the property to be forfeited included all 8 lots at 1310 Churchville Avenue with improvements thereon and appurtenances thereto as titled in Defendant's name.

2. The Order described the business to be forfeited as "a pharmacy and general merchandise retailing activity called 'T–Mart Drug Store', a sole proprietorship." The court stated further

that the "business and all business assets, including stock held for sale, fixtures, furnishings, and business goodwill and trade, are all subject to forfeiture to the extent of the defendant's interest in each."

3. In *Austin,* the Court held the Eighth Amendment applicable to *in rem* civil forfeitures.

*and Improvements Thereto, Located in Carteret County, North Carolina,* 998 F.2d 204, 212 (4th Cir.1993). This facilitation establishes a substantial connection between the building located and business operated at 1310 Churchville Avenue and the substantial crimes committed by Defendant there.

 Defendant argues that because the pharmacy occupied only ten percent of the premises at 1310 Churchville Avenue that the forfeiture of the entire property is disproportionate to the crimes for which he was convicted. The court disagrees. As discussed by this court in its February 22, 1993 Order, the jury convicted Defendant of Count 25 after receiving an instruction that the property could be forfeited if used "in any manner or part" to aid in the commission of crimes, in accordance with the forfeiture statute, 21 U.S.C. § 853(a)(2). Because Defendant used the T–Mart Drug Store to execute his crimes, forfeiture of the 1310 Churchville Avenue property is appropriate. *See United States v. Santoro,* 866 F.2d 1538, 1542 (4th Cir.1989). Consequently, the court holds that forfeiture of the T–Mart Drug Store and all that personal and real property located at 1310 Churchville Avenue shall be forfeited as indicated in the Final Order of Forfeiture attached herewith.

 Defendant further contends that the government has erroneously identified the T–Mart Drug Store as a sole proprietorship, when in fact, it is a corporation with additional shareholders, namely Mrs. Ruth Estes Tanner. While the court appreciates Defendant's concerns for the property interests of other shareholders, the court declines to pay much more than lip-service to Defendant's arguments in that Defendant has failed to provide the court with the stock distribution information which the court requested at the forfeiture hearing held March 14, 1994.[4] Defendant has simply provided the court with a March 1992 Annual Report from the State Corporation Commission for T–Mart Drugs Corporation, denoting the authorization for 30,000 shares and identifying both Defendant and Mrs. Tanner as officers of the corporation. Only the government has provided the court with information on the stock division among the Tanners, such information revealing that Defendant holds 79.74% of the stock in the business with Mrs. Tanner holding 9.05% of the shares, as reflected in the March 18, 1993 CPA report. Even accepting these percentages as accurate, the court declines to apportion Defendant's interest in the corporation here, adopting instead the government's recommendation that the court order the Marshal to dissolve the business, satisfy creditor debts and distribute the net proceeds to the shareholders, with the Marshal retaining Defendant's shares thereto.

 The court must also address whether the four promissory notes, dating as far back as 1966 and valued at approximately $509,-307.33, constitute forfeited property as identified in Count 25. The court first observes that Defendant failed to disclose the existence of these notes as property owed to him by T–Mart Drugs Corporation until January 21, 1994, after the initial sentencing hearing and long after Defendant had signed a financial affidavit swearing to the accuracy of the financial information provided to the United

---

4. The court finds curious Defendant's decision to raise the corporate identity issue at this point in the litigation when Defendant may have had a stronger leg to stand on in the earlier stages of the case if he had urged the non-existence of T–Mart Drug Store, sole proprietorship. As suggested by counsel for the government, Defendant could have sought a bill of particulars or other clarification of the phrase "all business assets" contained in Count 25 of the Indictment. The court finds instead that all entities involved in this case, including the jury, were sufficiently aware of both the denotation and connotation of the "business assets" to be forfeited as identified in Count 25. *See, e.g., United States v. Cauble,* 706 F.2d 1322, 1347 (5th Cir.1983) ("Barebones pleading suffices so long as it puts the defendant on notice that the government seeks forfeiture and identifies the assets subject to forfeiture with sufficient specificity to permit the defendant to marshal evidence in [his] defense.") (footnote omitted), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).

The court further rejects Defendant's argument that the forfeiture of "T–Mart Drug Store, sole proprietorship," results in the forfeiture of nothing on the alleged basis that there exists no such entity. Defendant's argument lacks merit since the jury convicted Defendant for violations stemming from his pharmacy business, T–Mart Drug Store, regardless of the nomenclature used by the government or this court in its January 26, 1993 Order of Forfeiture.

States Probation Officer. *See* PSR at 9. The United States maintains that if Defendant's demand for corporate satisfaction of the notes constitutes a claim against the value of the forfeited property, then the claim is barred by the right to petition provision of 21 U.S.C. § 853(n)(2). Section 853(n)(2) entitles all persons, "other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section ... within thirty days of the final publication of notice or [ ] receipt of notice under paragraph (1), whichever is earlier, [to] petition the court for a hearing to adjudicate the validity of [the] alleged interest in the property." To the extent that Defendant's request for satisfaction of the notes constitutes a claim against forfeited property, the court agrees with the government that § 853(n)(2) precludes Defendant's claim since the statute does not apply to the defendant.

■ Moreover, if Defendant asserts his claim on the ground that the notes represent separate obligations which the corporation owes him, the court agrees with the government that Defendant's interest in the notes passes to the government, regardless of whether the corporation was a party to the Indictment. The Grand Jury indicted both the Defendant and T–Mart Drug Store, and thus, under the relation-back doctrine, all of Defendant's property interests in the business at the time Defendant committed the violations are forfeited to the government. 21 U.S.C. § 853(c). Section 853(b) defines forfeitable property as real property and "tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b). The court finds that within that definition of property fall the four promissory notes since the notes constitute Defendant's intangible personal property in the form of claims against the corporation. Accordingly, the four promissory notes are forfeited to the government.

■ Finally, Defendant argues that the forfeiture of all the real and personal property forfeited constitutes an excessive fine under the Eighth Amendment. The statutes under which Defendant was convicted, 21 U.S.C. §§ 841(a)(1) and (b)(2) in thirteen counts, and 21 U.S.C. §§ 843(a)(4)(A) and (c) in eleven counts, authorize a maximum total fine of $3.58 million.[5] If the court had decided to impose a fine in this case, it possessed the statutory authority to fine Defendant the maximum total amount. In light of Defendant's abuse of his position as a pharmacist and the great number of units of controlled substances which Defendant illegally distributed, the court cannot say that such a fine would be improper. However, the court declined to impose a fine in this case, believing sufficiently punitive the forfeiture of all the real and personal property described in Count 25. Consequently, Defendant's contention is overruled.

In light of the substantial criminal activity which occurred in this case, the court cannot find that the forfeiture of all of Defendant's interests in the T–Mart Drug Store business and the real and personal property located at 1310 Churchville Avenue is excessive in relation to the crimes of which Defendant was convicted. According to the government's financial summary, *see* Exhibits 2 and 3 to United States' Request for Entry of Final Order of Forfeiture, as of January 24, 1994, T–Mart Drugs had a net value of $206,788.45, with the 1310 Churchville Avenue premises worth approximately $440,000. These figures, combined with the four notes valued at approximately $509,307.33, do not constitute an excessive penalty under the Constitution in the view of this court in light of the fine which could have been imposed and the extent of Defendant's activities. Having conducted the necessary proportionality analysis, the court holds that the property identified in Count 25 shall be forfeited as indicated in the Final Order of Forfeiture filed herewith.

---

**5.** The maximum fine authorized for a conviction of 21 U.S.C. § 841(b)(2) is $250,000 and of § 843 is $30,000. Using the alternative sentence under 18 U.S.C. § 3571(b), the maximum fine authorized thereunder for a felony is $250,000. Thus, the combined total penalty for the 24 counts is $3,580,000 or $6,000,000, using § 3571(b).

## II.

■ Mrs. Ruth Estes Tanner, wife of Defendant, lodged an objection at the March 14, 1994 hearing to the forfeiture in this case on the grounds that she did not receive proper notice under 21 U.S.C. § 853(n) and that she has a legal interest, based on an equitable distribution, in the property subject to forfeiture. Pursuant to § 853(n)(2), Mrs. Tanner filed a petition for a hearing on March 14, 1994, the day of the second forfeiture hearing in this case, asserting a marital property interest in the forfeited property through Virginia's equitable distribution statute, Va. Code Ann. § 20–107.3. Mrs. Tanner submits to the court a copy of a Bill of Complaint for divorce against Defendant and a March 11, 1994 letter addressed to the Clerk of the Richmond City Circuit Court, requesting the Clerk to file the Complaint. Mrs. Tanner maintains that she has a valid marital interest in that the property to be forfeited was acquired by Defendant during the course of the Tanner's marriage. Her interest, she claims, constitutes an inchoate interest in equitable distribution which arose at the time Defendant was incarcerated. Thus, she insists that she availed herself of the earliest possible opportunity in which to assert her interest and now petitions for a judicial hearing in accordance with § 853(n)(2).

Section 853(n) reflects Congress' intent to provide third parties a mechanism by which they may challenge the validity of a forfeiture order. *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir.1987). Interested third parties must, however, follow the statutory procedures for availing themselves of the right to an adjudication of their legal interests in forfeited property. In this case, Mrs. Tanner did not file her § 853(n)(2) petition until March 11, 1994, on the eve of the second forfeiture hearing and nearly one year after the last date, April 10, 1993, on which a petition could be filed.[6] In response to the government's contention that her claim is now time-barred, Mrs. Tanner argues that she did not receive adequate notice of the court's Order of Forfeiture in that she did not have actual notice.

The court disagrees that actual notice of the Order of Forfeiture was required in this case. Section 853(n)(1) states in pertinent part:

> the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

21 U.S.C. § 853(n)(1) (emphasis added). In accordance with the notice standards articulated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317–19, 70 S.Ct. 652, 658–60, 94 L.Ed. 865 (1950), the statute here requires notice by publication and permits the government to provide direct notice to those persons known by the government as having alleged a legal interest in the property. The court is not aware of any third person as having alleged or expressed a legal interest in the forfeited property at the time the government published notice of the court's forfeiture order on February 24th and March 3rd and 10th, 1993. Furthermore, this court is not inclined to believe that Mrs. Tanner did not have actual notice of the Order of Forfeiture, being the wife of Defendant and a resident of Staunton, Virginia where the notice was published. The court agrees with the government that Mrs. Tanner sat on her rights, failing to assert her interest—inchoate, contingent or speculative as it may have been—within the time limits prescribed by federal law. Although this court would not have been able to determine legal title to property or the value of Mrs. Tanner's interests in equitable distribution until a state court had classified and valued the Tanner's property under Va.Code Ann. § 20–107.3, had Mrs. Tanner notified or reminded the court of her spousal rights to marital property, the court could have con-

---

**6.** The United States Marshal published notice in the Staunton newspaper on February 24th and March 3rd and 10th, 1993. Thus, April 10, 1993 represents the last day on which an interested person could file a § 853(n)(2) petition with the court.

ducted a hearing based upon the challenge to its forfeiture order.

In resolving the outstanding matters here, the court is mindful that forfeitures are not favored in the law. *United States v. Borromeo*, 945 F.2d 750, 752–53 (4th Cir.1991) (citations omitted), *aff'd in part on reh'g*, 1 F.3d 219 (4th Cir.1993). Nevertheless, the 30–day requirement prescribed by § 853(n)(2) is viewed by this court as action-forcing, placing the burden on the third party to bring to the court's attention the assertion of a legal interest in property subject to forfeiture. A third party with a potentially protectable legal interest who fails to file a petition for a hearing does so at her peril, much like the would-be plaintiff who fails to file her complaint within the prescribed statute of limitations period. Consequently, Mrs. Tanner must now bear the brunt of her decision not to alert the court of her assertion of a legal interest at the required time.

■ Assuming for the sake of argument that Mrs. Tanner's claim is not time-barred, as the court holds that it is, the court turns to the merits of Mrs. Tanner's contention that she holds a legal interest in the forfeited property. Mrs. Tanner insists that she filed her petition in this court at the earliest possible date after which she could assert a legal interest in the equitable distribution of property, under Va.Code Ann. § 20–91(3),[7] specifically the date on which her husband was ordered to confinement. Section 20–91(3) provides, in pertinent part, that divorce may be decreed "[w]here either of the parties subsequent to the marriage has been convicted of a felony, sentenced to confinement for more than one year and confined for such felony subsequent to such conviction...." Because Defendant did not enter confinement until February 28, 1994, Mrs. Tanner claims she asserted her interest, by filing a Bill of Complaint for divorce, at the earliest

possible date on which she could claim a legally enforceable interest.

In *Reckmeyer, supra,* the Fourth Circuit noted that a legal interest for purposes of 21 U.S.C. § 853(n) "encompasses all legally protected rights, claims, titles, or shares in real or personal property." 836 F.2d at 205 (footnote omitted). The legal interest must exist, however, in a specific asset or assets forfeited under § 853. *Id.* at 205; *United States v. Shifflett*, No. 91–00033, 1994 WL 44325, at *3 (W.D.Va. January 20, 1994). The petitioner must eventually show, pursuant to § 853(n)(6)(A), that the right or interest "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts" giving rise to the forfeiture. As the court views it, Mrs. Tanner's interest in an equitable distribution of marital property was neither vested nor "superior to any right, title, or interest" of her husband during 1989 when Defendant committed the violations for which he was convicted. Consequently, it is unlikely that Mrs. Tanner would have prevailed in establishing a legal interest in the property under § 853(n)(6)(A), even had she timely filed her petition in the first instance.

Alternatively, the petitioner may seek to assert her interest as a bona fide purchaser for value of the right, title or interest in the property under § 853(n)(6)(B).[8] The *Reckmeyer* court recognized that in some cases, an unsecured creditor may bring an action to protect an interest before the obligation is due, e.g., to void a preference. The court concluded that while unsecured creditors may have a legal interest in forfeited property, that ownership does not necessarily guarantee standing to challenge a forfeiture. Because all of the debtor defendant's assets were subject to forfeiture in the *Reckmeyer*

---

7. Because Defendant faced possible incarceration for his convictions under the 24 Counts in the Indictment, this court finds it incredible that Mrs. Tanner would argue she had inadequate notice that incarceration was a possibility. Thus, the court rejects Mrs. Tanner's assertion that she filed her § 853(n)(2) petition at the earliest possible time.

8. The *Reckmeyer* court recognized that § 853(n)(6)(B) protects "general creditors who give value to the forfeited estate in an arm's length transaction," and those without knowledge of possible forfeitability of assets. 836 F.2d at 207. Mrs. Tanner does not appear to this court to represent a bona fide purchaser since her interest as a spouse in the equitable distribution of marital property did not arise through an arms-length transaction.

case, the unsecured creditors had standing. *Id.* at 205–06.

In the case at bar, Mrs. Tanner asserts a general interest in the equitable distribution of the Tanner's marital property, including that property subject to forfeiture here. In *Shifflett, supra,* this court addressed the merits of the claims of those persons asserting a general, unsecured interest in the defendant's estate, part of which was subject to forfeiture. This court distinguished *Reckmeyer* and concluded that the unsecured claimants lacked standing to assert their claims because their interests were not identified with any specific forfeited asset but rather were asserted against the defendant's entire estate where only part of the defendant's interests were being forfeited. *Shifflett,* 1994 WL 44325, at *3. Similarly, in this case, Mrs. Tanner asserts a general spousal interest in all the property subject to forfeiture under Count 25, not in any specific property and much in the posture as an unsecured creditor. With no case law in this circuit guiding the court as to the effect which a spousal right in the equitable distribution of marital property has in the criminal forfeiture context, the court could only speculate as to the resolution of the issue. This the court declines to do as an unnecessary act, in light of the procedural default here.

This court is not blind to the fact that Mrs. Tanner seeks only now, at the eleventh hour, to salvage property which may or may not be marital property for purposes of an equitable distribution following a divorce decree. The court does acknowledge that at some point Mrs. Tanner may be entitled to an equitable distribution of marital property under Va.

Code Ann. § 20–107.3(A), after a court decrees the divorce she seeks. *See Parra v. Parra,* 1 Va.App. 118, 336 S.E.2d 157, 160 (1985). Mrs. Tanner's interest in the equitable distribution of marital property, while not yet ripe, constitutes a spousal interest which this court would likely recognize in a forfeiture proceeding under *Reckmeyer, supra.*

The court understands that the purpose of 21 U.S.C. § 853(c), vesting in the United States title to forfeited property, is not to divest innocent persons of their legitimate interests in property. *See United States v. Certain Real Property at 2525 Leroy Lane,* 910 F.2d 343, 350 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); *see also Reckmeyer,* 836 F.2d at 208 (relation-back doctrine not intended to allow courts to invalidate " 'arms-length' " transaction) (citation omitted). As Defendant's spouse, Mrs. Tanner holds an interest in the equitable distribution of all marital property—that property which was acquired during the marriage and which is not separate property, *see* Va.Code Ann. § 20–107.3(A)(2)—which Mrs. Tanner requests in her Bill of Complaint for divorce. *See id.* § 20–107.-3(A)(1) (Michie 1990 Repl.Vol.) (court determines legal title, ownership and value of all property upon decreeing the dissolution of marriage and the divorce).[9] Had Mrs. Tanner asserted an interest in a timely fashion in this case, within the dictates of § 853(n)(2), this court would be required to conduct a hearing to adjudicate her interests in the forfeited property, or to order the Marshal to hold in escrow monies received pending determination by the divorce court of an equitable distribution award of the Tanner's marital property, as Mrs. Tanner urges.[10] Be-

---

9. In *United States v. Schifferli,* 895 F.2d 987, 989 (4th Cir.1990) (unnumbered footnote), the Fourth Circuit agreed with the lower court that the defendant's wife lacked standing to contest the forfeiture because she had no marital interest in the property. South Carolina law provided that ownership to marital property did not attach until marital litigation had been filed, and because the wife failed to file or commence such litigation, she lacked standing. *Id.*

The court agrees with Mrs. Tanner that *Schifferli,* in this respect, is inapposite because Mrs. Tanner has allegedly filed marital litigation, requesting an equitable distribution in property.

10. The court rejects the government's argument that Mrs. Tanner does not hold a legally protectable interest in the equitable distribution of the Tanner's marital property. Although the government's interest in the forfeited property vested in the government at the time Defendant committed the violations in 1989, *see United States v. De Ortiz,* 910 F.2d 376 (7th Cir.1990), Mrs. Tanner obtained an interest in marital property at the time of acquisition of the property during the marriage under Virginia law. *See Stainback v. Stainback,* 11 Va.App. 13, 396 S.E.2d 686 (1990); *Wagner v. Wagner,* 4 Va.App. 397, 358 S.E.2d 407 (1987). Had Mrs. Tanner asserted her interest in a timely fashion under 21 U.S.C. § 853(n), the court believes it would be forced to recognize

cause Mrs. Tanner failed to avail herself of the opportunity to challenge the forfeiture of the property contained in Count 25, and believing that substantial opportunity was provided to Mrs. Tanner for the assertion of an interest, the court overrules Mrs. Tanner's objections to the forfeiture of the property previously described in this case.[11]

The court's Final Order of Forfeiture shall this day issue.

### FINAL ORDER OF FORFEITURE

WHEREAS, on January 26, 1993, this court entered a Preliminary Order of Forfeiture pursuant to the provisions of 21 U.S.C. §§ 841(a)(1) and 853, based upon the trial jury's Guilty Verdict against the above Defendant on Counts 1–24 and the Special Verdict forfeiting certain properties named in Count 25 of the Indictment and more fully described herein.

AND WHEREAS, on February 24th and March 3rd and 10th, 1993, the United States published in a newspaper of general circulation notice of this forfeiture and of the intent of the United States to dispose of the property in accordance with the law and further notifying all third parties of their right to petition the court within thirty (30) days for a hearing to adjudicate the validity of their alleged legal interest in the property;

AND WHEREAS, receiving only the belatedly filed petition from Mrs. Ruth Estes Tanner, which the court has in the accompanying Memorandum Opinion dismissed as untimely, and it appearing from the record that no other claims, contested or otherwise, have been filed for any of the properties described in the Order of Forfeiture entered on January 26, 1993, with the exception of a claim submitted on behalf of Gypsy Hill Pharmacy, Inc., it is hereby

### ADJUDGED AND ORDERED

as follows:

1. That the right, title and interest to all of the hereinafter described property, wheth-er real, personal, and/or mixed, shall be, and it hereby is, condemned, forfeited and vested in the United States and shall be disposed of according to the law and the accompanying Memorandum Opinion:

 a. All that parcel of land and the improvements thereon, including all buildings, fixtures, attachments, easements, rents, leases, and other personal and real property located at 1310 Churchville Avenue, Staunton, Virginia, and more particularly described as:

All those eight certain lots or parcels of land, with all improvements thereon and all appurtenances thereunto belonging, formerly situated in Beverley Manor District of Augusta County, Virginia, but since having been annexed into the City of Staunton, designated as Lots Nos. One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), and Eight (8) in Block Number Twenty-seven (27) on the map of Staunton Park Addition which is of record in the Clerk's Office of the Circuit Court of Augusta County, Virginia, in Deed Book 113 at Page 241, and being the same identical lots or parcels of land conveyed to William Bennett Tanner by Oscar Nebel Hosiery Corporation by deed dated August 31, 1965, and of record in the Clerk's Office for the Circuit Court of the City of Staunton in Deed Book 149 at Page 177.

said property presently titled in the name of WILLIAM BENNETT TANNER.

### OTHER PROPERTY SUBJECT TO FORFEITURE

 b. A business owned and operated by WILLIAM BENNETT TANNER at the above-described location consisting of a pharmacy and general merchandise retailing activity called "T–Mart Drug Store." That business, and all business assets including stock held for sale, fixtures, furnishings, and business goodwill and trade, are all hereby forfeited.

---

Mrs. Tanner's interest, as a marital property right, in the forfeited property and to conduct a hearing to adjudicate the nature and extent of that interest.

11. Of course, the court's Order of Forfeiture does not divest Mrs. Tanner of her legal interest in the very substantial Tanner marital property not identified in the Indictment in this case.

2. The United States Marshal is ORDERED to dispose of the property according to law, subject only to:

 a. a claim for a recorded lease agreement filed on behalf of Gypsy Hill Pharmacy, Inc., for an area of twenty-eight by sixty-two (28' by 62') and one (1) rest room located at 1310 Churchville Avenue, Staunton, Virginia, which lease is recorded in the Circuit Court for the City of Staunton, Virginia, in Deed Book 313, Page 151;

 b. Any valid liens or judgments of record prior to the date of seizure, which shall be paid from the net proceeds from the sale of the defendant property, if any. The net proceeds are defined as the amount of money remaining after the United States Marshal has paid all expenses attributable to the seizure, maintenance, forfeiture and sale of the defendant property.

3. That any and all forfeited funds, including but not limited to currency, currency equivalents and certificates of deposit, as well as any income derived as a result of the United States Marshal's management of any property forfeited herein, and the proceeds from the sale of any forfeited property, after the payment of costs and expenses incurred in connection with the forfeiture, sale and disposition of the forfeited property, shall be deposited forthwith by the United States Marshal into the Department of Justice Assets Forfeiture Fund in accordance with 28 U.S.C. § 524(c) and 21 U.S.C. § 881(e).

4. The court finds that there has been no waiver of sovereign immunity in this case, and it is further ORDERED that the United States is exempt from payment of state and local taxes on the defendant real property from the date of seizure, January 26, 1993, until such time as the United States disposes of the property. *United States v. City of Adair, Iowa*, 539 F.2d 1185, 1189 (8th Cir. 1976).

5. The United States Marshal is directed to have a certified copy of this Order recorded in the Circuit Court for the City of Staunton, Virginia, in the name of John B. Metzger, III, or his authorized successor, agent on behalf of the United States as grantee and in the name of William Bennett Tanner as grantor. The United States Marshal is further directed to provide a copy of the recorded Order to the United States Attorney.