UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY LOCATED AT 461 SHELBY COUNTY ROAD 361, PELHAM, ALABAMA, Defendant,

Perry H. Brasher and Patricia Ann Brasher, Claimants.

Civ. A. No. 93–AR–2669–S.

United States District Court, N.D. Alabama, Southern Division.

July 12, 1994.

**936**

Claude Harris, James D. Ingram, U.S. Attorney's Office, Birmingham, AL, for U.S.

Alan C. Keith, Birmingham, AL, for Mortgage Investors, Inc.

Tamera Kaye Erskine, Birmingham, AL, for Ann Brasher and Perry Brasher.

Gary S. Olshan, Birmingham, AL, for Olshan Corp.

Frank C. Ellis, Jr., Wallace Ellis Fowler & Head, Columbiana, AL, for Bobbie Reynolds.

Joe A. Joseph, Lange Simpson Robinson & Somerville, Birmingham, AL, for Real Estate Financing, Inc.

Ricky Meeks Ceramic Tile, pro se.

## MEMORANDUM OPINION

ACKER, District Judge.

On June 6, 1994, this court entered an order in the above-entitled case directing the Probation Service to furnish the court with findings and an opinion in the nature of a pre-sentence report as to whether the forfeiture here sought by the United States against real property owned by Perry H. Brasher and Patricia Ann Brasher would violate the Excessive Fines Clause in view of *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).[1] On June 22, 1994, the United States filed a brief entitled "Government's Response to Claimants' Challenge of Forfeiture Based Upon Excessive Fines Clause in Light of Austin/Alexander." On June 24, 1994, Probation Officer Cynthia McGough submitted the requested report, a copy of which is attached hereto as an important addendum to this opinion. On June 30, 1994, the court denied the United States' motion for summary judgment and set the case for jury trial, concluding at the time that there was a material issue of disputed fact bearing on whether or not the proposed forfeiture constitutes an excessive fine in violation of the Eighth Amendment.

Since June 30, 1994, the court has further researched the problems presented by *Austin,* not only to the resolution of this controversy but to the decisions in many future civil forfeiture cases, and possibly criminal forfeiture cases. The court is not so naive as to think that whatever it says in this case will be the last word on the subject. However, the court, upon reconsideration, now concludes that there are no disputes of material fact requiring jury resolution and that the case is ripe for final decision.

---

1. ORDER

Because *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), makes clear that *in rem* forfeitures under 21 U.S.C. § 881(a)(4) and (a)(7) are to be considered as "punishment," implicating the Excessive Fines Clause of the Eighth Amendment, and because the Probation Service routinely furnishes this court its opinion with respect to the imposition of appropriate punishment in criminal cases, including fines, the Probation Service is hereby directed within twenty-one (21) days to furnish the court with a suggestion or opinion respecting what would be an appropriate and non-excessive fine to impose on Perry H. Brasher and Patricia Ann Brasher, considering their crimes of conviction upon which the forfeiture is based and what other punishment has already been meted out to them. If the Probation Service should conclude that the appropriate fine would be less than the Brashers' equity in the real property here sought to be forfeited, it is invited to suggest how to accomplish the miracle of declaring forfeited less than all of that equity.

The Probation Service and the parties are referred to *United States v. Sarbello,* 985 F.2d 716 (3d Cir.1993), wherein the Third Circuit held that the court may reduce the impact of a criminal forfeiture in order to conform to the Eighth Amendment prohibition against the imposition of an excessive fine. The United States and the Brashers are invited to brief the same subject that has been referred hereinabove to the Probation Service.

The court will delay its ruling on the motion of the United States for summary judgment until the court receives an opinion from the Probation Service in the nature of a pre-sentence report.

DONE this 6th day of June, 1994.

/s/ William M. Acker, Jr.
WILLIAM M. ACKER, JR.
United States District Judge

The brief submitted to this court by the United States is a lightly tailored version of a Department of Justice memorandum produced on or about January 7, 1994, prepared by the Assistant Forfeiture Office, Criminal Division, "to provide guidance and uniformity in responding to excessive challenges" under *Austin* and *Alexander v. United States,* —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). The second of these two cases is a *criminal* forfeiture case never previously referred to by this court.

It becomes apparent that the United States anticipates a burgeoning number of "excessive fines" challenges in both civil and criminal forfeiture cases and has prepared a uniform defense strategy. In both *Austin* and *Alexander,* the United States strenuously argued to the Supreme Court that the Eighth Amendment has no application to forfeiture proceedings, which are *in rem.* The reaction of all nine justices to this argument amounted to a stunning rejection of the United States' position, after which the United States has retreated to the position that "only in the rarest and most extreme cases" should forfeiture be held to violate the Excessive Fines Clause and therefore that proposed forfeitures should be upheld unless they "would shock the conscience." Whether the United States would have a jury decide whether its collective conscience is shocked, or whether the court's conscience should be the conscience to be or not to be shocked, remains a matter of speculation. The generic brief filed by the United States seems designed to justify 90% of all forfeitures. Because the instant case is a *civil* case, *Alexander* is only of secondary or collateral interest. Yet, the United States argues broadly in an attempt to build a dam to staunch the flood of resistance to forfeitures in both the criminal and the civil contexts.

▪ The United States obviously wants, at all costs, to avoid "proportionality" as the controlling criterion for judging the excessiveness question, and yet the word "excessive" necessarily implies an analysis based on an exercise of judicial discretion relating the degree of an individual owner's criminal culpability to the severity of the punishment represented by the value of his property to be divested. This has always been the analysis for applying the Excessive Fines Clause. Long before *Austin* the Supreme Court had recognized that "courts are competent to judge the gravity of an offense." *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983). This historic confidence in the courts to sentence fairly may have been ameliorated by the introduction of guideline sentencing, which includes a computation of the prospective fine range. According to the Sentencing Guidelines, if the United States had obtained a conviction of the Brashers for violating the federal statute proscribing the distribution of controlled substances, the minimum fine based on the sentencing profiles of both Brashers would have been $3,000 each. *See* the addendum, paragraphs 65 and 69. Of course, before the Brashers could be fined, the essential elements of specific proscribed conduct would have to be proven beyond a reasonable doubt by the United States, whereas under 21 U.S.C. § 881(a)(7), probable cause that their real property was used to facilitate drug activity having been proven, the burden of proving innocence for the purpose of avoiding forfeiture (but for any Eighth Amendment limitation) is on the Brashers. They cannot meet that burden and have not attempted to meet it.

The Eleventh Circuit has already taken the proportionality road for applying *Austin.* In *United States v. One Single Family Residence Located at 18755 North Bay Road, Miami,* 13 F.3d 1493 (11th Cir.1994), the Eleventh Circuit said:

> The Delios contend that the forfeiture of their home worth $150,000.00 as a penalty for the underlying gambling offense is so grossly disproportionate that it violates the Eighth Amendment's Excessive Fines Clause.

> \* \* \* \* \* \*

> Examining this case through the lens of *Austin,* and accepting the fact that Emilio Delio used his home for a gambling operation in violation of 18 U.S.C. § 1955, we conclude, under the particular facts of this case, that the forfeiture of his home, of an arguable value of $150,000.00, is an imposition of a *disproportionate* penalty.

*United States v. One Single Family Residence*, 13 F.3d at 1498 (emphasis supplied).

The Third Circuit has opted for "proportionality" as the predominant, if not the sole, factor for making sense out of *Austin*. *United States v. Premises Known as RR # 1, Box 224, Dalton, Scott Township and North Abington Township, Lackawanna County, P.A.*, 14 F.3d 864, 874–76 (3d Cir.1994).

In *United States v. Real Property Located at 6625 Zumirez Drive, Malibu, California*, 845 F.Supp. 725 (C.D.Ca.1994), the district court held that under *Austin* greater protection should be given the *home* in any "excessive fines" analysis than where personal property or non-residential real property is sought to be forfeited. Obviously, the harshness of taking the roof from over the head of a person, even a wrongdoer, is something that must be carefully examined if the Eighth Amendment is to be given meaning, as it was unanimously in *Austin*, even over the strong resistance of the United States. *Zumirez* was the first case which unequivocally recognized that forfeiture is an "all or nothing" proposition.

 Any analysis of the Eighth Amendment excessiveness question must factor in the ability of the offender to pay. The Sentencing Guidelines and its accompanying commentary recognize that before entering any order of restitution, or imposing any fine, the trial court must make a specific finding with respect to the financial ability of the defendant to pay it. This is necessary in order to avoid conflict with the prohibition against imprisonment for debt. Simply put, courts cannot order a culprit to pay more money in fines or restitution than he can reasonably be expected to pay, no matter how heinous his crime. This principle rarely comes into play in forfeiture cases because the mere fact that the wrongdoer owns the property to be forfeited proves his ability to turn it over, no matter what it is worth. But, this principle does dominate the excessiveness inquiry if the property to be forfeited is the offender's homestead, property historically given a high degree of protection. It is much more likely that the taking of the homeplace would constitute an excessive fine than the taking of other property of equal

value. Society already has more homeless people than it wants or can take care of, and this court is wary of adding the Brashers to the list of the homeless. It makes this court wince to think of the Brashers, who have regularly made their home mortgage payments, being forced into the street while their mortgage payments enure to the benefit of the United States.

Another recent district court decision reflecting an intelligent and fair response to *Austin* is *United States v. One Parcel of Property Located at Shelly's Riverside Heights*, 851 F.Supp. 633 (M.D.Pa.1994). That court said:

> The sanction the Government seeks to impose is a substantial one; even if the monetary value of the land and the cabin are not great, they seem to be the only significant possessions Mr. Deaner has.

> * * * * * *

> As noted, the statute proscribing Mr. Deaner's conduct, 21 U.S.C. § 841, exposed him to a potential fine of as much as $250,000. As noted, Mr. Deaner and Ms. Kurtz purchased the land in question for $7,950. Even with the addition of the log cabin, it is indisputable that the value of the property does not even approach the fine allowed by the statute. However, we do not find this fact to weigh heavily in favor of forfeiture. Section 841(b)(1)(D) sets forth the penalty for those who "manufacture, distribute or dispense" "less than 50 kilograms" of marijuana. Thus, the statute sweeps within its orbit offenders such as Mr. Deaner, who manufactured 23 kilograms but did not distribute it, as well as offenders who manufacture and distribute more than twice as much.

> We believe the Government's forfeiture action in this case is clearly excessive in light of the crime committed. Indeed, in the words of the Third Circuit in *Sarbello*, the attempted forfeiture reaches "such a level of excessiveness that in justice the punishment is more criminal than the

crime." 985 F.2d at 724. Therefore, we find as a matter of law that forfeiture in this case would offend the Eighth Amendment as an excessive fine.

Because by the very language of the Excessive Fines Clause judges are deemed capable of distinguishing between a fine that is not excessive and an excessive fine, courts must look at the facts and circumstances in particular cases, none of which are exactly alike. And yet *Austin* cannot extend the trial court's responsibility beyond a trial judge's competence. When the United States undertakes a forfeiture, it is the United States which has selected the amount of the "fine", and not the Congress, and not the courts. If the United States decides to forfeit a 100,000 contiguous-acre ranch because one of the boys in the bunkhouse was found to be peddling pot, when the ranch owner knowingly let the ranchhand get by with it, if the whole 100,000 acres are taken from the owner, the amount of such a "fine" would clearly be out of proportion to the property owner's offense, if he, in fact, committed any criminal offense. In fact, simply knowing about a small marijuana deal, while theoretically destroying the "innocence" of the owner for the purpose of exposing his illegally-used real property to forfeiture under 21 U.S.C. § 881(a)(7), does not itself constitute a federal crime. This fact makes it difficult, if not impossible, to determine the degree of such an owner's culpability for the purpose of assessing him a "fine" to appropriately punish him for not having committed a crime but rather for not telling on another for that other's criminal conduct. This court has not found a statute in the United States Code making it a crime to fail to promptly report a state or federal crime. There is, of course, the obvious distinction between "aiding and abetting" a crime, on the one hand, and "failing to report a crime," on the other.

■ While this court acknowledges its responsibility to discriminate between "excessive" and "non-excessive" fines, it does not acknowledge that it, or any other court, is capable of declaring and implementing a *partial* forfeiture in order to prevent the punishment from being too severe, namely, being out of proportion to the criminal conduct. The very prospect of ordering the forfeiture of a 0.001 undivided interest in a 100,000 acre ranch, as reflective of the owner's failure to report his marijuana-selling ranchhand, is only topped by the thought of attempting to carve out a particular couple of hilly acres from the 100,000 acres, together with ingress and egress to it, and vesting it neatly in the United States. No court, high or low, has thus far told this court how to "split the baby," so to speak, and this court is not Solomon.

There are many federal judges who are smarter than this one, and federal judges, over a 200–year period of expanding federal jurisdiction, have met many challenges, but this court seriously doubts that any federal judge has the time, the Solomonic wisdom, and the magic wand with which to perform the miracle of achieving proportionality in forfeiture cases in which the value of the property proposed to be forfeited clearly exceeds the owner's culpability. Thus, the only solution in such circumstances is the *Zumirez* "all or nothing" solution. It is no wonder that the United States argued to the Supreme Court so strenuously in *Austin* that the owner's culpability is irrelevant to the excessiveness question. Fortunately or unfortunately, it lost.

■ The practical impossibility of achieving proportionality in every case, no matter what the degree of culpability and the value of the property, leaves this court with only one question, whether the whole property owned by the Brashers, as non-innocent owners, with different degrees of culpability, must be forfeited as a non-excessive fine, or whether none of their only piece of property can be forfeited. This formulation is consistent with the conclusion recently reached by two other district courts. *See United States v. One Parcel of Property Located at 427 & 429 Hall Street, Montgomery, Montgomery*

*County, Alabama,* 853 F.Supp. 1389 (M.D.Ala.1994), and *United States v. Tanner,* 853 F.Supp. 190 (W.D.Va.1994), in each of which a district court allowed the forfeiture of an entire parcel because its taking was found not out of proportion to the owner's crime.

To the extent that *United States v. Sarbello,* 985 F.2d 716 (3d Cir.1993), suggests that the impact of a criminal forfeiture can be reduced in order to conform it to the Eighth Amendment's prohibition against the imposition of an "excessive fine," this court would like for the Third Circuit to explain how to do it. If *Sarbello* has any application, it is not necessary to apply it to a *civil* forfeiture case, such as this one, because *Sarbello* dealt with a *criminal* forfeiture case, which is a markedly different animal. This court invited the parties and the Probation Service in the instant case to tell the court how to apply *Sarbello,* but no one made the attempt.

Although the United States had an opportunity to do so, it has made no effort to dispute the facts recited in the report of Probation Officer McGough. Her statement of facts is hereby ADOPTED as the court's statement of pertinent undisputed facts. Her suggested facts are consistent with the facts upon which the motion for summary judgment of the United States was based. In other words, the dispositive facts are not in dispute. This has led the court to a reconsideration of its setting of the case for jury trial when there are no determinative factual disputes or credibility determinations. The court in *United States v. One Parcel of Property Located at Shelly's Riverside Heights, supra,* correctly pointed out:

As a procedural matter, we note that Mr. Deaner has not filed a motion for summary judgment on behalf of the property. However, in certain circumstances, a district court can enter summary judgment in favor of a party *sua sponte. Viger v. Comm'l Insurance Co. of Newark,* 707

F.2d 769, 774 (3d Cir.1983). The Government has conceded that there are no genuine issues of material fact and that the case may be decided as a matter of law. *See* Fed.R.Civ.P. 56. Thus, we will enter judgment in favor of the property.

851 F.Supp. at 639. In other words, there is no purpose to be served in trying a case that has a foreordained outcome. This is such a case.

Based on the admitted facts, this court reaches the same conclusion that Probation Officer McGough reached in paragraph 75 of her report, viz:

It is the opinion of this officer that the Brashers have been sufficiently punished and any *further fine by way of forfeiture is excessive.*

Officer McGough's conclusion may be an overstatement. Nonetheless, in this court's opinion the forfeiture of the Brashers's home would constitute an excessive fine under these overall circumstances, and this court finds it impractical, if not impossible, to carve out a lesser interest in the residence for divestiture. The court does not mean to condone what the Brashers did, but the fact that drug trafficking cannot be condoned does not lead inexorably to the taking away of the only residence of two small drug traffickers long after those traffickers have paid their debts to society and have cooperated fully with law enforcement. A taking that would be as "unfair" as this one would be, would be "excessive."

In conclusion, this court will go so far as to hope that its conscience is not too easily shocked. Nobody has ever accused this court of being a bleeding heart, but its conscience nevertheless would be shocked if the Brashers' residence were forfeited to the United States in this case. Therefore, the court by separate order will *sua sponte* grant summary judgment in favor of the property and the Brashers by separate order.

**APPENDUM**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| ONE PARCEL OF REAL PROPERTY | ) 93–AR–2669–S |
| LOCATED AT 461 SHELBY COUNTY | ) |
| ROAD 361, PELHAM, ALABAMA | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |
| PERRY H. BRASHER and PATRICIA | ) |
| ANN BRASHER, ET AL., | ) |
| | ) |
| Claimants | ) |

**Prepared For:** Honorable William M. Acker, Jr.
U.S. District Judge

**Prepared By:** Cynthia McGough
U.S. Probation Officer
Birmingham, Alabama 35203
(205) 731–1754

**Assistant U.S. Attorney**
James Ingram
1800 5th Avenue North
Birmingham, Alabama 35203
(205) 731–1785

**Defense Counsel**
Tamara Erskine
2107 5th Avenue N., Suite 100
Birmingham, Alabama 35203
(205) 252–9751

**Nature of Proceeding:** Complaint for Forfeiture in Rem,
21 U.S.C. § 881(a)(7)

**Related Cases:** Shelby County Circuit Court Case Nos.:

CC–90–314
CC–90–315
CC–90–316
CC–90–317
CC–90–318
CC–90–319
CC–90–320
CC–90–321
CC–90–322
CC–90–323
CC–90–506
CC–90–507
CC–90–508
CC–90–509

**Date Report Prepared:** June 24, 1994 **Date Report Revised:**

**Identifying Data:**

Claimant: Perry H. Brasher Claimant: Patricia Ann Brasher

| | | | |
|---|---|---|---|
| **Date of Birth:** | 11–23–33 | **Date of Birth:** | 6–20–36 |
| **Age:** | 60 | **Age:** | 58 |
| **Race:** | White, Non–Hispanic | **Race:** | White, Non–Hispanic |
| **Sex:** | Male | **Sex:** | Female |

# 942

| | | | |
|---|---|---|---|
| SSN No: | 421–38–9616 | SSN No: | 424–44–0359 |
| FBI No: | 644 339 LA8 | FBI No: | |
| USM No: | | USM No: | |
| Other ID No: | | Other ID No: | |
| | | | |
| Education: | 7th Grade | Education: | High School |
| Dependents: | One (Wife) | Dependents: | One (Husband) |
| Citizenship | United States | Citizenship | United States |
| | | | |
| Legal Address: | 86 Highway 361 Pelham, Alabama 35124 | Legal Address: | 86 Highway 361 Pelham, Alabama 35124 |
| | | | |
| Aliases: | Tom | Aliases: | Ann |

## PART A. THE PROCEEDING

1. The United States filed a verified complaint for forfeiture in rem on the property located at 461 Shelby County Road 361, Pelham, Alabama, on December 22, 1993. The complaint was filed pursuant to 21 U.S.C. § 881(a)(7). It alleges that the claimants used the property from December 1989 to March 1990 to facilitate the sale and possession of cocaine and marijuana. The legal address for this property has been changed recently to 86 Highway 361.

2. On June 6, 1994, the Court issued an order directing the U.S. Probation Office to furnish the Court with an opinion respecting what would be an appropriate and non-excessive fine to impose on the claimants, considering their crimes of conviction upon which forfeiture is based and what other punishment has already been meted out to them. The Court also invited the Probation Office to suggest a manner of declaring forfeited less than all of the equity in the property subject to foreclosure if the Probation Office concluded that the appropriate fine would be less than the Brashers' equity in the real property sought to be forfeited.

### The Underlying Offenses

3. In late 1989, the Alabama Alcoholic Beverage Control Board (ABC) and the Shelby County Sheriff's Department were conducting an undercover drug investigation in Shelby County. This investigation brought them into contact with Perry H. Brasher, a/k/a Tom Brasher, and his wife, Patricia Ann Brasher, a/k/a Ann Brasher.

4. On December 28, 1989, an undercover officer made the first of what would be seven purchases of drugs from either Tom Brasher, or Tom and Ann Brasher, at their residence.

5. On five occasions, the undercover officer purchased marijuana. On two occasions, he purchased cocaine.

6. On March 22, 1990, law enforcement officers executed a search warrant at the residence. They found marijuana in the residence on the day of the search. They also found a .25 caliber automatic pistol on Tom Brasher's person, a plastic bag containing ten packets of cocaine, a prescription bottle containing one packet of cocaine in his shirt pocket, and $852 in U.S. currency. A search of Mr. Brasher's car revealed a .38 caliber Smith & Wesson revolver and packets containing cocaine and marijuana.

7. The total amount of drugs sold on the various occasions and found during the search was as follows:

| | | |
|---|---|---|
| Marijuana | 448.95 | grams |
| Cocaine | 14.10 | grams |

8. Tom and Ann Brasher entered guilty pleas on December 7, 1990, in Shelby County, Alabama, to charges of Possession of Marijuana for Other Than Personal Use, Possession of a Controlled Substance (Cocaine), and several counts of Unlawful Distribution of a Controlled Substance.

9. Ann Brasher pled guilty in case nos. CC–90–314, 315, 316, 506, and 507. Tom Brasher pled guilty in case nos. CC–90–317, 318, 319, 320, 321, 322, 323, 508, and 509.

10. On March 11, 1991, Mrs. Brasher was placed on probation for a period of five years. She was not fined but was ordered to pay restitution and court costs in each case. She also paid $100 to the

Crime Victims Compensation Commission in each case. The total amount, which has been paid in full, was $1,647.00.

11. On March 11, 1991, Mr. Brasher was sentenced to a five-year sentence with three years to serve and the remainder on probation. The sentence was amended to five years custody. He was paroled on August 24, 1992, and expired from parole supervision on December 13, 1993. Mr. Brasher was fined $100 in each case ($900). He was also ordered to pay restitution and court costs as well as the Crime Victims Compensation Commission (total $4,001). He has an outstanding balance of $4,768 according to the Shelby County Circuit Clerks Office.

12. Subsequent to their convictions, Mr. and Mrs. Brasher forfeited to the state of Alabama $852, a 1976 Ford, and the two firearms found on the property.

## APPLICATION OF U.S. SENTENCING GUIDELINES TO THE STATE CHARGES

Victim Impact

13. There is no victim of this offense.

Adjustment for Obstruction of Justice

14. The Brashers have done nothing to obstruct justice in the investigation of the Shelby County offenses.

Adjustment for Acceptance of Responsibility

15. The Brashers entered guilty pleas to all the charges brought against them in Shelby County Circuit Court.

Offense Level Computations

16. The 1993 edition of the Guidelines Manual has been used in this case. All the cases were grouped pursuant to U.S.S.G. § 3D1.2(d).

17. **Base Offense Level:** The Guideline for violation of these State of Alabama drug offenses is found in § 2D1.1 and calls for a base offense level of 12. This level is reached by converting the cocaine involved in this case (14.10 grams) to a marijuana equivalency of 2,804 grams. Adding the amounts of marijuana to the marijuana equivalent of cocaine creates a total amount of 3.2 kilograms, which has an offense level of 12. 12

18. **Specific Offense Characteristics:** Mr. Brasher had a gun in his pocket on the day his home was searched. There was also a pistol in his car from which he sold drugs on at least one occasion. Therefore, the offense level should be increased by 2. +2

19. **Victim–Related Adjustments:** None. 0

20. **Adjustments for Role in the Offense:** None. 0

21. **Adjustment for Obstruction of Justice:** None. 0

22. **Adjusted Offense Level (Subtotal):** 14

23. **Adjustment for Acceptance of Responsibility:** Pursuant to § 3E1.1(a), the offense level is reduced 2 levels. −2

24. **Total Offense Level:** 12

## PART B. CLAIMANTS' CRIMINAL HISTORY

Claimant: Patricia Ann Brasher

Juvenile Adjudication(s)

25. None.

Adult Criminal Conviction(s)

26. None.

**Claimant: Perry H. Brasher**

Juvenile Adjudication(s)

27. None.

Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/Disposed | Guideline | Pnt |
|---|---|---|---|---|---|
| 28. | 5/4/64 | Insufficient Funds Check, Jefferson County District Court | 5/4/64: Fined | § 4A1.1(c) | 0 |
| 29. | 7/31/64 | Insufficient Funds Check, Jefferson County District Court | 7/31/64: Fined. | § 4A1.1(c) | 0 |
| 30. | 9/10/64 | Insufficient Funds Check, Jefferson County District Court | 9/10/64: Convicted. | § 4A1.1(c) | 0 |
| 31. | 1/17/76 | Reckless Driving, Pelham Police Department | 1/17/76: Fined. | § 4A1.1(c) | 0 |

**NOTE:** This offense was reduced from a DUI charge.

| | | | | | |
|---|---|---|---|---|---|
| 32. | 5/28/78 | Grand Larceny, Jefferson County Circuit Court | 12/11/78: 2 years, suspended, 2 years probation | § 4A1.1(c) | 0 |
| 33. | 11/26/78 | DUI, Alabaster, Alabama Police Department | 11/26/78: Convicted. | § 4A1.1(c) | 0 |
| 34. | 11/2/81 | DUI, Hoover, Alabama Police Department | 3/23/82: Convicted. | § 4A1.1(c) | 1 |
| 35. | 3/21/86 | DUI, Alabaster, Alabama Police Department | 3/21/86: Convicted. | § 4A1.1(c) | 1 |
| 36. | 11/4/86 | DWLR, Improper Tag, Pelham, Alabama Police Department | 11/4/86: Convicted. | § 4A1.2 | 0 |
| 37. | 9/17/87 | DWLS, DUI, Calera, Alabama Police Department | 9/17/87: Convicted. | § 4A1.1(c) | 1 |
| 38. | 3/22/88 | Improper Tag, Shelby County District Court | 3/22/88: Convicted. | § 4A1.2(c) | 0 |
| 39. | 9/2/90 | DUI, Tarrant, Alabama Police Department | 9/2/90: Convicted. | § 4A1.1(c) | 1 |

Criminal History Computation

40. The total of the criminal history points for Patricia Ann Brasher is 0. According to the sentencing table at U.S.S.G. Chapter 5, Part A, 0 criminal history points establish a criminal history category of I.

41. The total of the criminal history points for Perry H. Brasher is 4. According to the sentencing table at U.S.S.G. Chapter 5, Part A, 4 criminal history points establish a criminal history category of III.

## PART C. PERSONAL HISTORY OF CLAIMANTS

Personal and Family Data

42. Perry H. Brasher, age 61, and Patricia Ann Brasher, age 58, have been married to each other since 1955. Both of them were born in the Birmingham area and have lived here all of their lives. Their extended families also live in this area.

43. They have four adult children: James Perry Brasher, age 38, lives in Center Point and is a partner in the business with his father, Brasher Masonry Company; Regina Diane Golden, age 35, lives in Montevallo and is a Family Dollar Store manager; Janet Faye Maynard, age 33, lives in Pelham and is the office manager at Birmingham Orthodontics; Darla Renee Wiles, age 31, lives in Panama City, Florida, and is a bookkeeper.

Physical Condition

44. Mr. Brasher suffered a job injury to his back in 1976 that left him paralyzed from the waste down for three years. He regained the ability to walk after undergoing therapy at BMC Montclair. He has a 60% disability as a result of this injury.

45. Mrs. Brasher takes Procardia for high blood pressure. Approximately one year ago, her doctors discovered that she has a blood disease which causes her spleen to destroy platelets. She is treated by a hematologist at Brookwood Medical Center.

Mental and Emotional Health

46. Neither claimant has a history of mental or emotional problems.

Substance Abuse

47. Mrs. Brasher has no history of drug or alcohol abuse.

48. Although Mr. Brasher denied having a drug or alcohol problem, his arrest record indicates otherwise. He has five DUI convictions and a reckless driving conviction which was reduced from a DUI charge. Were he a candidate for supervision by this Court, this office would urge the Court to place him in the drug and alcohol aftercare program.

Education and Vocational Skills

49. Mrs. Brasher graduated at Montevallo High School in 1954.

50. Mr. Brasher completed the 7th grade.

Employment Record

51. Mrs. Brasher has been employed at Wal–Mart in Pelham for the past 3½ years. She earns $6.20 per hour at her 40–hour per week job. For seventeen years she was employed as a secretary for Greyhound Bus Lines.

52. Mr. Brasher has been self-employed for the past 35 years in the masonry business. He and his son still operate Brasher Masonry Company. They have three employees. In reality, Mr. Brasher is not physically able to do much work, but he continues to help his son run the business.

Financial Condition: Ability to Pay

53.

Assets

 Cash

| | | |
|---|---|---|
| Checking Account | | 424.00 |
| | Subtotal: | $ 424.00 |

 Unencumbered Assets

| | | |
|---|---|---|
| 1981 Ford Pick-up | | 300.00 |
| | Subtotal: | $ 300.00 |

Equity in Other Assets

| | |
|---|---|
| Residence | 51,144.00 |
| 1991 Mitsubishi (Value $10,800) | .00 |

| | |
|---|---|
| Subtotal: | $51,144.00 |
| Total Assets: | $51,868.00 |

Unsecured Debts

| | |
|---|---|
| Credit Cards | 3,000.00 |
| Personal Loan | 25,000.00 |
| Medical Bills | 4,789.00 |
| Alabama Dept. of Revenue (1990 Tax Year) | 10,051.00 |
| State Court Fines, Court Costs, etc. | 4,800.00 |

| | |
|---|---|
| Total Unsecured Debt: | $47,640.00 |

NET WORTH: $ 4,228.00

Monthly Cash Flow

Income

| | |
|---|---|
| Mr. Brasher's V.A. Benefits | 651.00 |
| Mrs. Brasher's Employment Income | 528.00 |

| | |
|---|---|
| Total Income: | $ 1,179.00 |

Necessary Monthly Living Expenses

| | |
|---|---|
| Property mortgages/Rent | 565.00 |
| Food | 250.00 |
| Utilities | 121.00 |
| Telephone | 64.00 |
| Credit cards | 123.00 |
| Car insurance | 59.00 |
| State Court Fines | 50.00 |
| Exterminator | 24.00 |
| Car Note | 253.00 |
| Property Taxes | 22.00 |

| | |
|---|---|
| Total Expenses: | $ 1,531.00 |

| | |
|---|---|
| Net Monthly Cash Flow: | $ −352.00 |

54. The Brashers file joint tax returns. For the past three years they have had the following adjusted gross incomes:

1991—$7,169.00
1992—$9,576.00
1993—$9,911.00

55. The claimants own their home and two vehicles. The 1981 Ford Pick-up truck is paid for. The loan balance on the 1991 Mitsubishi exceeds the fair market value of the car.

56. The Brashers purchased their residence in 1975. In 1990, at the time of their conviction, the property had an appraised value of $57,500. In 1993, the assessed value was $58,370. According to the Shelby County Tax Assessor's Office, the property has been recently reappraised with a value of approximately $70,000.

57. There are several potential claims against the property in addition to the mortgages. The Brashers owe taxes to the Department of Revenue for 1990 in the amount of $10,051.74. Mrs. Brasher has accumulated almost $5,000 in medical bills in the past year due to the blood disease she is being

treated for. Mr. Brasher borrowed $25,000 from Steve Daily. He states that he does not make regular payments on that loan but pays it as he can. There are also several other smaller potential claims against the property, which the Court has recognized in an order dated June 6, 1994. As a result, the figure of $51,144, which represents the Brashers' equity in their residence, overstates the value of the property to them should it be sold.

58. The Alabama Department of Revenue began garnishing Mrs. Brasher's paycheck in June 1994. Her check reflected a 25% deduction of $125.23 which is to be taken from each paycheck. Her monthly income figure ($653) on the previous page reflects this garnishment.

59. Although Mr. Brasher assists his son in their masonry business, he depends on his V.A. benefits for income. Mrs. Brasher has a full-time job at Wal–Mart at which she brings home $778 per month. Their combined incomes do not cover the necessary monthly living expenses listed above.

60. It is the conclusion of the Probation Office that these claimants would not be a candidate to be fined if they were defendants in this Court.

## PART D. SENTENCING OPTIONS

**Claimant: Patricia Ann Brasher**

### Custody

61. **Guideline Provisions:** Based on a total offense level of 12 and a criminal history category of I, the guideline range for imprisonment is 10 to 16 months.

62. The defendant would have been eligible for a "split sentence" in Federal Court. The Court could have sentenced her to serve at least five months with the remainder served in either community confinement or home detention as a condition of supervised release.

### Supervised Release

63. **Guideline Provisions:** The guideline range for a term of supervised release is at least three years but not more than five years or the minimum required by statute, whichever is greater. U.S.S.G. § 5D1.2(a).

### Probation

64. **Guideline Provisions:** Because the minimum of the guideline range is greater than six months, the defendant is not eligible for probation. U.S.S.G. § 5B1.1(a)(2).

### Fines

65. Assuming that the claimant had been convicted in Federal Court under 21 U.S.C. § 841(b)(1)(C), the guideline fine range would have been $3,000 to $1,000,000.

**Claimant: Perry H. Brasher**

### Custody

66. **Guideline Provisions:** Based on a total offense level of 12 and a criminal history category of III, the guideline range for imprisonment is 15 to 21 months.

### Supervised Release

67. **Guideline Provisions:** The guideline range for a term of supervised release is at least three years but not more than five years or the minimum required by statute, whichever is greater. U.S.S.G. § 5D1.2(a).

### Probation

68. **Guideline Provisions:** Because the minimum of the guideline range is greater than six months, the defendant is not eligible for probation. U.S.S.G. § 5B1.1(a)(2).

Fines

69. Assuming that the claimant had been convicted in Federal Court under 21 U.S.C. § 841(b)(1)(C), the guideline fine range would have been $3,000 to $1,000,000.

## PART E. OPINION OF PROBATION OFFICE ON ISSUES PRESENTED BY THE COURT

70. The Court in its order of June 6, 1994, directed this office to render an opinion respecting what would be an appropriate and non-excessive fine for the claimants considering their crimes of conviction and the punishment already meted out to them.

71. Tom and Ann Brasher were convicted in a total of 14 cases of selling and/or possessing small amounts of marijuana on five occasions and cocaine on two occasions. The total sales come to about $500.

72. Mrs. Brasher was placed on probation and is still on supervision. She has paid the court costs and restitution totalling $1,647 in full. Mrs. Brasher would not have been eligible for probation under the guidelines, however. The costs imposed on her ($1,647) is also less than the minimum of the fine range ($3,000) in this case.

73. Mr. Brasher received a five-year sentence. He served 17 months. He was fined $900 and ordered to pay additional amounts to Shelby County totalling $4,001. He has an outstanding balance of $4,768. It is interesting to note that both the time he served (17 months) and the total fine and costs imposed ($4,901) are within the ranges of punishment called for by the guidelines in a case such as this.

74. The issue arises, however, of whether they would have been fined at all in this Court. Certainly, the fines and costs imposed were reasonable, but it is my opinion that they would not have been fined within the guideline range, if at all, based on their financial condition. They would have had to pay the $50 assessment fee, of course ($700).

75. It is the opinion of this officer that the Brashers have been sufficiently punished and any further fine by way of forfeiture is excessive.

Respectfully submitted,

/s/ Cynthia McGough
Cynthia McGough
Senior U.S. Probation Officer

CM/csp

Approved:

/s/ Oscar J. Stephenson, Jr. 6-24-94

Oscar J. Stephenson, Jr. DATE